### FREEMAN H. ELLSWORTH v. FOGG & HARVEY.

#### Promissory Note. Payment.

The maker of a negotiable promissory note, which has been indorsed in blank by the payee, may rightfully pay it to, or settle it with, any person holding the same, provided he acts in good faith, and there is nothing in the circumstances tending to cause suspicion that the holder is not the rightful owner.

The acceptance by the holder of a promissory note of part of the amount due upon it, in satisfaction and discharge of the whole note, and the surrender of the note by the holder to the maker to be cancelled, is a full discharge of the note, and no action can be maintained for the unpaid portion.

ASSUMPSIT. The writ was not served upon the defendant Fogg, and there was no appearance by him. The defendant Harvey pleaded the general issue, and the case was tried by jury, at the June Term, 1861, POLAND, CH. J., presiding.

The plaintiff claimed to recover on five notes, all dated the 28th of February, 1857, one for $590, payable in one month, and four for $911.75 each, payable severally in three, six, nine, and twelve months from date, with interest annually, at the Suffolk Bank, Boston, signed by Fogg & Harvey, and payable to the plaintiff or order. The plaintiff had not the notes in his possession, but had notified the defendant to produce them on the trial. In pursuance of the notice Harvey produced the notes, but insisted that they had been settled and paid, and surrendered to him, and that he was not liable thereon. The notes all bore the plaintiff's endorsement. The suit was prosecuted by, and for the benefit of, one Aiken, of Boston, Massachusetts.

It appeared by the evidence introduced by the plaintiff, that the notes were brought to Peacham, where the defendant Harvey lived, by one Shattuck, an attorney, from Manchester, New Hampshire, who claimed to have an assignment of them from the plaintiff, to secure a debt against him. Shattuck employed Mordecai Hale, Esq., to commence a suit on the notes, and some property was attached on the writ. After the suit was brought, Shattuck retained the notes in his possession, and returned to Manchester. On the 6th of January, 1859, after the suit had

been brought, the plaintiff being indebted in quite a large sum to Aiken, and being called on for payment or security, made an assignment of these notes to him. The notes were at this time in Shattuck's hands, and Shattuck made an assignment of them from the plaintiff to Aiken, on a separate piece of paper. A son of Aiken was present at the time, acting for his father in the matter, and testified that at this time neither the plaintiff nor Shattuck said anything in relation to the notes having been previously assigned to Shattuck. He was to aid in their collection, as the attorney of Aiken.

On the 28th of December, 1859, Aiken wrote to Mr. Hale, giving him notice of the assignment of the notes to him. About the 1st of February, 1860, Shattuck came to Peacham, having the notes in his possession, and a negotiation was entered into for a settlement and compromise of the claim. The defendant Harvey represented that he had not the pecuniary ability to pay the notes, and could pay but a small part of them. In consideration of these representations, Shattuck finally consented to take eleven hundred dollars and give up the notes, and Harvey paid Shattuck the eleven hundred dollars and he surrendered the notes to Harvey, and agreed the suit should be discontinued. Mr. Hale took some part in the negotiation, and was present at the settlement, but it was mainly conducted by Shattuck. Shattuck claimed to have the full right to control and manage the notes, and it was not claimed that the defendant Harvey had any knowledge of any assignment of the notes to Aiken, or of any want of right or authority in Shattuck to control the notes. It was also proved that the plaintiff had not paid his debt to Aiken, which he assigned these notes to secure, and also that Aiken gave Shattuck no authority to make such settlement and surrender of the notes.

After the notes had been surrendered, Aiken, having learned it, gave the defendant Harvey notice of his assignment, and employed counsel to take charge of the present suit upon the notes.

The counsel for Aiken claimed that the plaintiff was entitled to recover upon the notes, firstly, because Shattuck had no right to hold or control the notes as against Aiken, and was not author-

ized by him to make any such settlement and surrender of the notes; and, secondly, that if he had full authority to make a settlement, the payment of a part of the notes furnished no consideration for the surrender of the balance, and that the plaintiff was at least entitled to recover all but the eleven hundred dollars paid.

But the court held, and so instructed the jury, that as it was conceded that the notes were lawfully in Shattuck's possession, and that as he had them in his possession, with the plaintiff's endorsement thereon, claiming to have the legal title to them and the right to control them, and as the defendant had no knowledge to the contrary, the defendant had the right to treat and deal with him as the owner of the notes, and that if in consequence of the defendant's representations of his poverty and inability to pay the whole notes, Shattuck accepted less than the full amount of the notes and surrendered the whole notes, the balance could not be legally recovered from him, if such representations were honestly and truthfully made.

To these instructions, and the refusal of the court to charge as the plaintiff claimed, the plaintiff excepted.

The jury returned a verdict for the defendant.

*Leslie & Rogers* and *Peck & Colby*, for the plaintiff.

*B. N. Davis* and *T. P. Redfield*, for the defendant.

ALDIS, J. I. Shattuck was apparently the owner of the notes. He had claimed to have an assignment of them, and had them in his possession. The notes were negotiable, and indorsed by the payee in blank. He claimed to have the full right to manage and control the notes, and Harvey had no knowledge that any other person had any claim to them. Nor had Harvey notice of anything that should awaken suspicion, or put him on inquiry.

The fact that Shattuck was an attorney by profession—so long as he did not appear to be acting as an attorney for any other person—was not a fact to awaken suspicion, or justify a refusal to deal with him as the owner of the notes.

As Shattuck claimed title, and had all the usual *indicia* of title, and nothing was known to Harvey to suggest a doubt upon that point, he was justified in dealing with Shattuck as the owner.

II.  Does acceptance of a part of the amount due on a promissory note, in satisfaction and discharge of the whole note, and a surrender of the note by the owner to the maker, to be cancelled, bar a suit brought by the owner for the recovery of the unpaid portion?

We are not disposed to disturb the rule as stated in *Wheeler* v. *Wheeler*, in the 11th Vt., that payment of a part of a debt upon an agreement that it shall be satisfaction of the whole, even though the agreement and payment are shown by a receipt, will not extinguish the whole debt.  It is claimed here that besides the part payment and the agreement, there is another element— the surrender of the notes to the maker—which operates as a complete discharge of the whole amount due upon them.  Inasmuch as it is the *agreement* of the parties that gives validity and force to their contracts, and to the discharge of them ; *their agreement* which courts seek to ascertain, and which, when ascertained, justice requires should be faithfully and exactly enforced, it seems plain that their *agreement* as to payment and its performance, ought to be the great and controlling considerations in determining when a debt is paid and discharged.

Nor does it seem satisfactory to one's sense of justice to be told, that, when the parties have agreed that payment of part of a debt shall discharge the whole, and one of the parties has performed by payment, the other party shall be protected in refusing to perform his part, and may collect the portion of the debt which he has agreed to discharge, because there is no consideration for the agreement.

Neither does it seem to add any thing to the good sense of this class of decisions to say, that if the payee of the debt, on accepting a part, execute a release of the rest of the debt, that shall be valid, but if he execute a receipt only, it shall be void.

But we must abide by the old decisions, which have long since determined, that payment of part in discharge of the whole

does discharge the whole, if shown by a release under seal; but if shown by a written agreement, or a receipt, or any proof short of a release, it does not.

In the notes to *Cumber* v. *Wane*, in 1 Smith's Leading Cases, p. 450, the American annotator argues that this rule of law requiring proof of such an agreement by a technical release " is a principle duly established in the elements of the law, which has long sustained itself in the courts, and rests on something better than a mere technicality." He proceeds, " But as a principle of evidence, this rule, which requires for the substantiation of such agreements, either *a surrender of the instrument*, or a legal release, is a just, wise and convenient rule ; so great is the danger of fraud and mistake."

That the rule so much commended by the writer has been materially shaken, both in England and some of our American states, is amply shown by the cases so copiously cited in his notes. It is not, perhaps, desirable that a rule of law so long settled and acted upon as this has been, in this state, should be disturbed by judicial decision. Nor is it necessary even to examine it and its qualifications, in order to decide this case. It is sufficient for us to hold that the surrender of an instrument to be cancelled by the party to whom it belongs, is equivalent to a release.

A release is the act of a party by which he does what he has agreed to do. Before the release is executed, his liability stands upon agreement merely, and if the agreement is without consideration, he may legally refuse to do what he has agreed. He may back out from his agreement, but not from his release.

The surrender of the instrument in which the party's rights appear is also the act of the party. Giving it up would seem literally to be dissolving the contract " *eo ligamine quo ligatur*."

We think the surrender of the notes by the owner to the maker may well be put upon the same ground as a release,—as being an act of the highest significance and clearest import to show the deliberate and well understood agreement of the parties. It is their agreement *executed ;*—a release in practical operation. It is free from liability to mistake or fraud. The deliberate

surrender of notes by the owner to the maker, to be cancelled, is an act which no man of prudence, or of the least knowledge of business, would do, unless he intended to discharge the debt. A release, as well as the surrender of notes, may be procured by deceit and fraud,—but when they are made according to the intent of the parties, they should be sustained.

We do not find this question directly decided in any of the books which we have had the opportunity to examine. But the decision as here announced seems to us reasonable, and consistent, in the main, with the decisions on this subject.

Judgment affirmed.