AMOS M. SHELDON, Respondent, *v.* SAMUEL HORTON, Impleaded, etc., Appellant.

A waiver, by the indorser of negotiable paper, of demand upon the maker, and of notice of non-payment, may be by implication from his acts, as well as by express words.

And accordingly, where the holder of a promissory note, just previous to its maturity having sought an interview with the indorser, shown him the note, and stated that "the maker wanted it to remain another year," asked him if he was willing,—*Held* (CHURCH, Ch. J., and FOLGER, J., con-*tra*), that the reply of the indorser that he was willing to let it remain, and that it was a good note, were a waiver of demand and notice at maturity, and their omission did not discharge the indorser.

*Held*, further, that under these circumstances, the waiver was complete, independently of the question whether an agreement between the maker

and holder for an extension for one year on the note was or was not made. In such case, the liability of the indorser becomes, by the waiver, absolute on the maturity of the note, and no subsequent demand and notice, at the expiration of the year of extension, or at any other time, are necessary to fix him.

(Argued November 2d, and decided November 22d, 1870.)

APPEAL from a judgment of the late General Term of the Supreme Court in the second district, affirming a judgment for the plaintiff upon a verdict.

The action was upon a promissory note made by Wm. H. Horton, May 3d, 1865, payable to Niles Knickerbocker or bearer, for the sum of $400, one year from date, with interest at six per cent. It was indorsed by the defendant to Samuel Horton, before its delivery to Knickerbocker, and then delivered by the maker in payment of a debt.

Subsequently by an arrangement between Knickerbocker and Henry Sheldon, the note was transferred to the latter.

On the 19th of April, 1866, and a few days before the maturity of the note, Henry Sheldon being about to enter into an arrangement by which his title to the note would be transferred to the plaintiff, with the knowledge of the latter went to the defendant, Samuel Horton, when, as Sheldon testified, the following conversation took place.

"I told him William (the maker) wanted this (the note) to remain another year. I asked if he was willing, and he said he was willing to let it remain; and he took the note and looked it over and said it was a good note."

Henry, after this interview, transferred the note to the plaintiff.

This conversation was denied by the defendant, who swore that nothing took place at the interview, except with reference to his signature.

It did not appear in the case whether William had, in fact, made any request for time, or whether any time had been given him.

The plaintiff placed the note in a bank for safe keeping soon after he obtained it. No demand was made or notice

given until the 3d of May, 1867, when he personally demanded payment of the maker, and also of the defendant, notifying him that he had failed to get payment of William.

The court left to the jury to decide whether the account of Henry Sheldon of the interview on the 19th of April, or that of the defendant was worthy of belief, charging them that, if they found that of Henry to be true, then the plaintiff was entitled to the verdict.

The counsel for the defendant raised the legal question as to the effect of the omission of protest and notice by motion to nonsuit, to direct a verdict and by exception to the charge.

The jury found for the plaintiff.

*Homer A. Nelson*, for the appellant, on the sufficiency of the alleged waiver of demand and notice, cited *Oswego Bk.* v. *Kromer* (Hill & D. Supp., 122) ; *De Groot* v. *Blake* (Anth. N. P., 299) ; *Keeler* v. *Bartine* (12 Wend., 110) ; *Jackson* v. *Richards* (2 Cai., 343) ; *Buckley* v. *Bentley* (42 Barb., 646) ; *Coghlan* v. *Dinsmore* (9 Bosw., 453) ; *Union Bk.* v. *Magruder* (7 Pet., 287, Story, J.) ; *Bruce* v. *Lytle* (13 Barb., 163) ; *Spencer* v. *Harvey* (17 Wend., 489.)

*Allard Anthony*, for the respondent, upon the same question, cited Edw. on Bills, 633 ; John. Ca., 99 ; 10 Wendell, 504 ; 13 Barb., 163 ; 4 Campbell, 285 ; 17 Wend., 489 ; 4 E. D. Smith, 458.

That by such waiver, the contingent liability was changed to an absolute one, he cited (18 East, 430 ; 17 Johns., 176 ; 18 id., 327 ; 3 Carrington & Payne, 456) ; *Harrington* v. *Dorr* (3 Robertson, 275.)

ANDREWS, J. It may be assumed that the statement made by the defendant to the witness Henry Sheldon, which is relied upon as constituting a waiver of demand and notice, was communicated to the plaintiff, at the time he received the transfer of the note, and that the defendant understood that such communication was to be made.

The interview between the witness and the defendant took place a few days before the maturity of the note, and pending a negotiation between the witness and the plaintiff for the purchase by the plaintiff of the note and other property. It was sought by the witness, at the suggestion of the scrivener who drew the agreement for the sale, and in the charge of the court, the statement of the defendant at the interview was, without objection, treated as having been made to the plaintiff.

There was a direct contradiction between the testimony of the witness Henry Sheldon and that of the defendant as to what was said between them at the interview referred to.

This question was submitted as a question of fact to the jury, and the issue was found for the plaintiff, and the version of the witness Sheldon is therefore to be regarded as the true one. This brings us to the question in the case, viz.: Whether the conversation between the witness and the defendant, as related by Henry Sheldon, was, in law, a waiver by the defendant of demand and notice, and rendered the defendant liable to pay the note, although no demand was made or notice given. The court charged the affirmative of this proposition.

The witness testified that, at the interview, he showed the note to the defendant, and told him that the maker " wanted it to remain another year." The witness continued: " I asked him if he was willing, and he said he was willing to let it remain. He looked it over, and said it was a good note."

There is no express evidence in the case of any agreement between the holder and the maker of the note for the extension of the time of payment. If such an agreement was made, the fact is to be inferred from the statement of the witness at the interview with the defendant, and the omission to collect the note at its maturity.

The liability of an indorser of a note to pay it is, in general, upon the implied condition that payment thereof shall be demanded of the maker at maturity, and in case of default,

that notice of non-payment shall thereupon be given to the indorser.

These conditions are for the benefit and protection of the indorser. The demand is to be made, so that the principal debtor, may be first called upon to pay the debt, and notice of nonpayment, in case of default is to be given, so that the indorser may have prompt notice, and the opportunity to protect himself from loss.

But the rule that demand and notice are requisite to charge the indorser, is subject to exceptions, as when the note was made for the accommodation of the indorser, or when he has before its maturity taken an assignment of all the property of the maker for his protection. (Story Prom. Notes, §§ 268, 282.) In such cases, the reason of the rule requiring demand and notice does not apply, and the indorser is liable without them. So an indorser may waive these proceedings, and consent to be bound, although they are not taken.

This is upon the obvious principle, that a party to a contract may renounce the benefit of any stipulation in it, designed for his own protection. Such waiver may be by express words, or it may arise by implication from the acts or conduct of the indorser.

It may precede the maturity of the note, or may arise upon a promise to pay the note with knowledge of the *laches* afterward.

The right that demand should be made and notice given is personal to the indorser, and the waiver requires no new consideration to support it. (Parsons on Notes and Bills, 404, 574; Story on Notes, § 275; *Tebbetts* v. *Pearce*, 23 Wend., 379; *Coddington* v. *Davis*, 3, Den., 17; *Wall* v. *Bay*, 1 La. An., 312; *Barclay* v. *Weaver*, 19 Pa. St. 398; *Law* v. *Stewart*, 20 Maine, 98.)

In this case, the assent of the indorser that the note should "lie over" another year, when applied to by the holder, and when informed by him, that the maker of the note desired it, was inconsistent with the idea of the continuance of the

obligation of the holder to demand payment of the maker, or to give notice of non-payment, in order to hold the indorser.

In case the payment of the note was extended, there was manifestly no propriety in making demand of payment at maturity, for by the arrangement of the parties, the time of payment was postponed, nor would notice of nonpayment be proper, for the maker, under the new arrangement, would not then be in default.

There seems to be no construction of the transaction consistent with the view, that when the consent was given, the defendant intended to make his liability to pay the note, depend upon demand and notice at its maturity.

It is, we think, a fair inference from the evidence, that the time of payment was extended by an agreement between the holder and the maker of the note. But the consent of the defendant was not upon condition that such agreement should be made.

The question to the indorser whether he was willing to allow the note to lie another year, did not imply that the holder was to enter into any positive engagement with the maker for such extension. The consent was full and unconditional, and justified the plaintiff in omitting proceedings, to fix by demand and notice, the liability of the indorser, so long as the consent was not withdrawn.

The holder, in fact, allowed the note to mature, without demand or notice, and deferred its collection for the time suggested.

It is claimed by the appellant that after the alleged consent to the extension of time, the plaintiff deposited the note, before it became due, in a bank for collection, and he so stated on his cross-examination. No place of payment was specified in the note, and on his re-examination the plaintiff testified that he left the note at the bank, with other papers, for safe keeping.

This evidence could be legitimately considered upon the controverted question, whether the defendant consented to the extension of the time of payment; but it did not tend to

qualify or explain the effect or meaning of the language used by him when the consent was given. (*Boyd* v. *Cleveland*, 4 Pick., 525.)

We are of opinion that under the circumstances, the consent proved was, in law, a waiver of demand and notice, and that there was no error in the charge of the court. (*Creamer* v. *Perry*, 17 Pick., 332; *Spencer* v. *Hervey*, 17 Wend., 489.)

The liability of the indorser became absolute on the maturity of the note, and no subsequent demand or notice at any time was required. (*Amoskeag Bank* v. *Moore*, 37 N. H., 539; *Ridgeway* v. *Day*, 13 Penn. St., 208; *Forster* v. *Jurdison*, 16 East, 104.)

The point now made for the first time, that the complaint was insufficient, cannot be considered. The question of waiver was litigated on the trial without objection as to the form of the pleadings.

The judgment should be affirmed.

ALLEN, GROVER, PECKHAM and RAPALLO, JJ., concurred with ANDREWS, J., for affirmance.

CHURCH, Ch. J., and FOLGER, J., were for reversal, holding that the conversation, as sworn by Henry Sheldon, constituted no sufficient waiver.

Judgment affirmed.*

---

43 99
126 88

---

* NOTE.—As to the liability of the defendant as indorser by indorsing his name to give credit to the maker with the payee. (See *Cromwell* v. *Hewitt*, 40 N. Y., 491*n*.)—REP.