NATIONAL HUDSON RIVER BANK, RESPONDENT, *v.* LUCY A. REYNOLDS, APPELLANT, IMPLEADED, ETC.

*Indorser of a note — when the offer of a renewal note constitutes a waiver of notice of protest — mortgage given by way of collateral — enforcement of —* res adjudicata.

A mortgage was given by one Lucy A. Reynolds, as security "for any and all indorsements now made by the said Lucy A. Reynolds, or that she may hereafter make of note or notes or other paper of ٭ ٭ ٭ R. Reynolds' Sons, ٭ ٭ ٭ and which shall be owned and held by the said National Hudson River Bank," and " to be a lien and security to said amount for the payment of any ٮand all notes, drafts or engagements indorsed by the said Lucy A. Reynolds, now held by said bank, or which may hereafter be held and owned by said bank."

R. Reynolds' Sons made a note for $5,000, dated November 25, 1887, to the order of Lucy A. Reynolds, payable in three months at the National Hudson River Bank.   This note was indorsed as follows:

"I hereby pledge my separate estate, both real and personal, for the payment of this note.                            "LUCY A. REYNOLDS."

This note was discounted before, and was held by, the bank at the time of its maturity, on which latter day, according to a custom which had existed between the plaintiff and R. Reynolds' Sons, there was sent to the bank a similar note of that date, of the same amount and with like signature and indorsement, in renewal of the former note.   In this case the renewal note was held for some days until the meeting of the board of directors of the bank, who decided not to accept it.

*Held,* that, under the circumstances of this case, there was a waiver by the indorser, Lucy A. Reynolds, of notice of the non-payment of the note of November 25, 1887.

That while Lucy A. Reynolds might have had no intention of expressing a waiver of the right to have notice of non-payment, yet the bank might still have understood from her act that she knew that the note was not to be paid, and that, therefore, the bank need not give to her notice of what she already knew.

That the use in the mortgage of the word "engagements" would comprehend within its scope any contract upon which Lucy A. Reynolds might be liable; under which construction of the guaranty the notice required in the case of negotiable paper would not be necessary.

In a foreclosure action with a claim for deficiency against several defendants a waiver of claim therefor as to all but one defendant is, as to those defendants embraced within such waiver, in effect, an amendment of the complaint, and the judgment in such action is not an adjudication on the question as to the personal liability of such defendants.

APPEAL by the defendant Lucy A. Reynolds from a judgment of foreclosure and sale, entered in the office of the clerk of the county

of Columbia on April 7, 1890, after a trial at a Special Term held in the county of Columbia.

*George B. Wellington*, for the appellant.

*John Cadman*, for the respondent.

LEARNED, P. J. :

This is an action to foreclose a mortgage given by Lucy A. Reynolds in 1883 to the plaintiff. It was given as security "for any and all indorsements now made by the said Lucy A. Reynolds or that she may hereafter make of note or notes or other paper of * * * R. Reynolds' Sons * * * and which shall be owned and held by the said National Hudson River Bank." And "to be a lien and security to said amount for the payment of any and all notes, drafts or engagements, indorsed by the said Lucy A. Reynolds, now held by said bank or which may hereafter be held and owned by said bank."

R. Reynolds' Sons made a note for $5,000 to the order of Lucy A. Reynolds, dated November 25, 1887, payable in three months at the National Hudson River Bank. This note had the following indorsement :

"I hereby pledge my separate estate, both real and personal, for the payment of this note.          "LUCY A. REYNOLDS."

This was the last in a series of renewals of a note for the same amount held by plaintiff at the time of the execution of the mortgage, similar in form and indorsement to that above described. The note of November 25, 1887, was discounted by plaintiff before it was payable, and was held by plaintiff at maturity.

On the morning of February 18, 1888, the date on which said note became payable, there was sent to plaintiff a similar note of that date, of the same amount, with like signature and indorsement. There was also sent with the same about forty-eight dollars in money and a letter from R. Reynolds' Sons, in substance stating that the note and checks were to take up the old note due that day.

The cashier of the plaintiff held said note, subject to the action of the board of directors at their next meeting, which would regularly have been in a week. The next meeting at which there was a

quorum was April seventh, and at that meeting the board decided not to accept the renewal note. No notice of non-payment of the note which came due February twenty-eighth was given to Lucy A. Reynolds.

It had been the custom, between plaintiff and R. Reynolds' Sons, for plaintiff to accept renewal notes which would be discounted by the cashier on the day of their receipt and the amount credited to R. Reynolds' Sons. The maturing note would be paid by a check of R. Reynolds' Sons and the note thus paid would be stamped "paid" by the bank and given up.

The principal question is, whether, under the circumstance, there was a waiver by Lucy A. Reynolds of notice of non-payment, and whether she became liable on the note due February twenty-eighth.

The note being payable at plaintiff's counter, and being held by plaintiff at maturity, was duly presented for payment. But it was not paid, and notice of non-payment was not given to the indorser. There is no doubt that an indorser may waive such notice, and may do this without consideration. It is evident that the defendant indorsed the note of February twenty-eighth for the purpose of renewing the note due that day. She, therefore, must have known that the maker would not pay the old note at its maturity, for she provided him with the means of renewing it; and if paid it would, of course, not need to be renewed. As in the case of *Sheldon* v. *Horton* (43 N. Y., 93), where the plaintiff told the indorser that the maker wanted the note to remain another year, and the indorser said he was willing; so here. The indorser's willingness that the debt should be extended or renewed removed the necessity of notifying the indorser of non-payment. The object of such notice is that the indorser may protect himself from loss. But when he consents to a renewal he evidently knows that the maker will not pay, and can protect himself if he so desires.

It is said by the defendant that the bank refused to accept the proposed renewal, and did not notify her of the refusal. It is not an actual extension or renewal which is relied on as a waiver, but the indorser's knowledge that the note would not be paid, and the communication of such knowledge to the bank. In the case last mentioned it did not appear that there was a valid agreement or any consideration between the maker and the holder that the note

should be extended; and the case states that it did not appear whether any time had been given the maker. The waiver, therefore, did not rest on a valid extension, but on the act of the indorser, implying knowledge that the note was not to be paid at maturity.

We must take the act of defendant in regard to the note in question in connection with similar acts in regard to former renewals of the same liability, and in connection with the mortgage now in suit. And, as said in *Cady* v. *Bradshaw* (116 N. Y., 188), "It (the waiver) may result from implication and usage, or from any understanding between the parties which is of a character to satisfy the mind that a waiver is intended." That case was one where the indorser, when an extension was proposed, said he would let his name remain on the note. (See, also, *Leary* v. *Miller*, 61 N. Y., 490.)

It may not be safe to assert that Lucy A. Reynolds had any distinct intention of expressing a waiver of the right to have notice of non-payment. But it may well be said that the bank could understand from her act that she knew that the note was not to be paid, and, therefore, that the bank needed not to give her notice of what she knew.

But there is a further view. There are several clauses in the mortgage stating its object. One is as follows: "This mortgage is given and is to remain a good and continuing security to the said National Hudson River Bank to the amount of $5,000, and to be a lien and security to said amount for the payment of any and all notes, drafts or engagements indorsed by said Lucy A. Reynolds, now held by the said bank, or which may hereafter be held or owned by said bank." Here is a clause making this mortgage security for the payment of any notes indorsed by defendant. The mortgage is not simply to secure her liability as indorser, but it is to secure the payment of any notes indorsed by her. And the language includes not only notes and drafts, but "engagements." Now, the word "engagements" is not descriptive of commercial paper, to which alone the peculiar liability of indorsers applies. It is a word which might describe any contract. And if a contract, other than negotiable paper, were held by the bank, and Lucy A. Reynolds had "indorsed" it, the parties to this mortgage could not have expected that such a contract would be protested. We must, therefore, take the words "indorsed by the said Lucy A.

Reynolds" as merely descriptive of the "notes, drafts or engagements," the payment of which was secured by the mortgage, and not as limiting the lien of the mortgage to that commercial paper on which she should be legally charged as indorser. There is another clause which speaks of security for indorsements, but that does not limit the clause above cited. If the mortgage had expressed that it was to secure the payment of the $5,000 note made by R. Reynolds' Sons, and then held by the bank, it would not have been necessary, under the mortgage, to give notice of the non-payment, even if Lucy A. Reynolds had been an indorser thereon. So, now, the bank has a note indorsed by Lucy A. Reynolds. This mortgage is security for the payment of that note. Its indorsement simply identifies it as one of the notes which the mortgage secures.

The defendant raises a point that there had been a former adjudication in favor of Lucy A. Reynolds, which was a bar to this action. That was a foreclosure action to which she was a party. The mortgage, like this, was to secure notes of R. Reynolds' Sons. There was a demand for judgment for deficiency against several defendants, including her. She answered and denied that she was liable. On the trial plaintiff waived all claim for deficiency against any party except Gordon B. Reynolds, and on such waiver the learned judge who tried the case stated in his findings that the liability or non-liability of the other defendants was not tried before him, and dismissed the complaint as to them for any deficiency, and Lucy A. Reynolds recovered costs.

The defendant urges that the plaintiff in that action should have amended his complaint; that as he did not amend he might have there tried the question of the liability of Lucy A. Reynolds, and is, therefore, bound by the decision, and cannot now assert her liability. In the view last taken of this case, that judgment is immaterial. Nor do we think that prior decision is an adjudication on the personal liability of Lucy A. Reynolds. The waiver of the plaintiff, set forth in the judge's decision, was equivalent, in effect, to an amendment of the complaint. The defendant's counsel quotes a sentence from *Pray* v. *Hegeman* (98 N. Y., 358). But the following sentence explains the rule : "Whatever is necessarily implied in the former decision is for the purpose of the estoppel deemed to have been actually decided." Neither Lucy A. Reynolds' personal

liability nor her non-liability was necessarily implied in the former decision. It was not comprehended or involved therein. The foreclosure could, and did, proceed without any decision on that point. The former decision is no bar here. Whether or not, then, the court below in this case found that the alleged claim for deficiency in the former action was based on the note in question is of no consequence.

The judgment is affirmed, with costs.

LANDON, J., concurred; MAYHAM, J., not acting.

Judgment affirmed, with costs.