ABRAHAM SCHWARTZMAN, Appellant, v. JOSHUA L. POST, Respondent,
Impleaded with HARRIS POSTAWALSKY.*

*Promissory note — surrender thereof by the holder to the maker on payment of less
than its face value and a promise to pay the balance — the holder cannot maintain
an action on the note to recover the balance.*

Where the holder of a promissory note for $5,000 surrenders such note to the
maker upon the payment by the latter of the sum of $3,250 and his promise to
pay the balance of the indebtedness, the holder is precluded, by subdivision 5
of section 200 of the Negotiable Instruments Law (Laws of 1897, chap. 612),
from subsequently maintaining an action against the maker upon the note to
recover the balance thereof.

LAUGHLIN, J., dissented.

APPEAL by the plaintiff, Abraham Schwartzman, from an order
of the Appellate Term of the Supreme Court, entered in the office
of the clerk of the county of New York on the 16th day of Novem-
ber, 1903, which order reversed a judgment of the City Court of
the city of New York in favor of the plaintiff, entered in the office
of the clerk of said court on the 15th day of February, 1903, upon
the verdict of a jury, and also (as stated in the notice of appeal)
from a judgment of reversal entered in the office of the clerk of the
city of New York on the 13th day of January, 1904, upon said
order of the Appellate Term.

*Alexander Rosenthal,* for the appellant.

*B. Lewinson,* for the respondent.

Determination, of Appellate Term affirmed, with costs, on the
opinion of the court below, and judgment absolute ordered for
defendant, with costs.

Present — VAN BRUNT, P. J., PATTERSON, INGRAHAM, MCLAUGH-
LIN and LAUGHLIN, JJ.

LAUGHLIN, J. (dissenting):

According to the testimony of the plaintiff the note was not paid
nor was it surrendered up to the defendant Post upon the under-

*This case was decided in April, 1904.

standing that it was to be deemed paid, but on the distinct agreement that the defendants were to remain liable for the balance for which plaintiff has recovered in this action. The defendants did not, therefore, in my opinion, by this surrender become holders of the note in their "own right" within the intent and meaning of subdivision 5 of section 200 of the Negotiable Instruments Law (Laws of 1897, chap. 612), and the transaction did not constitute a discharge of the note. The defendant Post merely became the bailee thereof for the payee.

The following is the opinion delivered by FREEDMAN, P. J., in the court below:

FREEDMAN, P. J.:

This action was brought to recover an alleged balance of $1,750 claimed to be due upon a demand note for $5,000, dated May 1, 1899, payable to the order of the maker, the defendant Post, and indorsed by him and his father, the defendant Postawalsky. Postawalsky was not served with the summons and did not appear. After a trial by a jury a verdict for the amount claimed was rendered in favor of the plaintiff. The plaintiff's complaint, originally, averred that he is "now the lawful owner and holder" of the note in suit, but it was subsequently amended by striking out the allegation that plaintiff was the "holder." The answer denied the delivery of the note to the plaintiff and that he was the owner thereof, and set up, among other defenses, that the note had been delivered up and surrendered to Post, the maker, about April 9, 1900, and that defendant had ever since been the holder thereof.

At the beginning of the trial, the note, in pursuance of a notice given by plaintiff's attorney, was produced by the defendant Post, and by plaintiff's attorney offered and received in evidence.

The testimony of the transaction out of which the cause of action arose, as given by the parties, is very conflicting, and a reading of the record convinces one that neither party has given a complete statement of the facts.

The plaintiff's version, however, was accepted and believed by the jury, and must, therefore, for the purposes of this appeal be taken as true, and, briefly stated, is as follows:

In 1898 plaintiff and the defendant Postawalsky were copartners in the cloak business. This partnership was dissolved by

mutual consent in 1899, and plaintiff received the note in question for his interest in said business. Subsequently, upon demanding payment of the note of the defendants, Post told the plaintiff that he (Post) could not pay the full amount of the note, but would pay $2,000 if the plaintiff would give up the note. This offer was afterwards increased by Post to the sum of $2,500. Plaintiff then authorized his brother (Schwartz) to continue the negotiations with Post. For some reason, not appearing, the plaintiff had placed the note with one Kohn, who testifies that he also called upon Post in regard to obtaining payment of the note, and that Post refused to pay in full. Plaintiff's brother (Schwartz) testifies to similar conversations with Post. In all of the conversations Post is alleged to have said, in substance, that unless the amount offered was accepted by the plaintiff and the note given up, that he, Post, would ".protect" himself, that "I have been through the mill once before and I know how to take care of myself." These witnesses also testify that Post promised to pay the balance of his indebtedness, but insisted upon the surrender of the note to him. Matters between the parties culminated in a meeting of Post, Kohn, one Kohler, attorney for Post, one Essberg, attorney for plaintiff or his brother Schwartz, and Schwartz, at Essberg's office, at which time Post paid $2,750 and Essberg $500 to Schwartz, who then gave the note to Essberg. The $3,250 was then paid plaintiff, and the note eventually given to Post, although when Post came into possession of the note does not appear, nor is it shown for what reason Essberg contributed the sum of $500 towards the amount paid the plaintiff.

At the close of the plaintiff's case and again at the close of the whole case the defendant's attorney moved to dismiss the complaint upon the ground that "the plaintiff has failed to establish a cause of action and upon the ground that by his own admission of the delivery and surrender of the note by him to the defendant, (the plaintiff) extinguished any liability on that note. * * * My contention is that the delivery of that note by the plaintiff to the defendant constituted a discharge and cancellation of that note."

I am of the opinion that the defendant Post is right in this contention.

The cause of action is based wholly upon the note. Subdivision 5 of section 200 of the Negotiable Instruments Law provides that a

negotiable instrument is discharged "when the principal debtor becomes the holder of the instrument at or after maturity in his own right."

The instrument in question was a negotiable note. The term "holder" is defined in section 2 as follows: "'Holder' means the payee or indorsee of a bill or note, who is in possession of it, or the bearer thereof," and section 3 contains the following definition: "Person primarily liable on instrument.— The person 'primarily' liable on an instrument is the person who by the terms of the instrument, is absolutely required to pay the same."

The words of subdivision 5 of section 200, "in his own right," merely exclude such a case as that of a maker acquiring the instrument in, purely, a representative capacity.

The case at bar comes exactly within these provisions. Post was the maker of the note and primarily liable thereon; it was surrendered to him and he became the "holder" thereof without fraud or mistake in "his own right."

Prior to the adoption of the Negotiable Instruments Law, it has been held that if a note be surrendered by the payee to the maker the whole claim is discharged. (*Jaffray* v. *Davis*, 124 N. Y. 164, 170; *Ellsworth* v. *Fogg*, 35 Vt. 355; *Kent* v. *Reynolds*, 8 Hun, 559; *Beach* v. *Endress*, 51 Barb. 570; affd. in *Larkin* v. *Hardenbrook*, 90 N. Y. 333.)

Whether the plaintiff can maintain an action upon the original indebtedness or upon the defendant Post's promise to pay the balance due, the consideration therefor being the plaintiff's surrender of the note, need not now be determined.

As the foregoing views necessitate a reversal of the judgment the other alleged errors need not be considered.

Judgment reversed, new trial ordered, with costs to the appellant to abide the event.