"Now, as to the question of the age of the plaintiff. The plaintiff says that when he went to engage himself to work for the defendant in this case the superintendent told him that it was not necessary for him to have a certificate after he had told the superintendent that he was not sixteen years of age."

This was excepted to by the defendant, but the court stated: "I think I will let that stand. I think he said so."

The plaintiff testified expressly that when he was employed nothing was said to or by the defendant's superintendent as to his age. His testimony on the subject was as follows:

"I didn't tell him I was sixteen years old when he employed me; I am sure of that. He didn't say anything about my age. I didn't tell him I was sixteen. He said I didn't need a certificate. That wasn't because I told him that I was sixteen years old."

The positive statement in the charge of the court, to the effect that the plaintiff did testify that he had informed the superintendent that he was not 16 years of age, adhered to after an exception had been taken and the attention of the court directed to the evidence upon the subject, may very well have misled the jury, and requires a reversal in the interests of justice.

Judgment and order should be reversed.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur.

———————

(112 App. Div. 398)

### FIRST NAT. BANK OF CITY OF BROOKLYN v. GRIDLEY.

(Supreme Court, Appellate Division, Second Department. April 20, 1906.)

1. BILLS AND NOTES—INDORSEMENT—ACCOMMODATION INDORSEMENT.

The fact that the maker of a note procures its discount for his own benefit is notice to the discounter that an indorsement is not in the usual course of business, but for the maker's accommodation.

2. SAME—TRANSFER BY INDORSEMENT.

By the express provisions of Negotiable Instruments Law, Laws 1897, p. 730, c. 612, § 71, an indorsement of all the payees is necessary to give good title to the transferee.

3. ALTERATION OF INSTRUMENTS—NEGOTIABLE PAPER—STATUTES.

Negotiable Instruments Law, Laws 1897, p. 725, c. 612, § 33, provides that, where an instrument is wanting in any material particular, the person in possession thereof has prima facie authority to complete it by filling up the blanks. Held that, where one of the payees of a note payable to the payees jointly indorsed it, and mailed it to the maker, and he altered the note by placing his own name in the place of one of the payees and by erasing the word "jointly," his conduct was not authorized by section 33.

4. BILLS AND NOTES—EFFECT OF INDORSEMENT—IMPLIED WARRANTIES.

Negotiable Instruments Law, Laws 1897, p. 734, c. 612, § 116, provides that an indorser warrants to all subsequent holders that the instrument is genuine; that all prior parties had capacity to contract; that the indorser has no knowledge of any fact which would impair the validity of the instrument; that the instrument is valid and subsisting; and that on due presentment it shall be paid according to its tenor. Section 205, p. 745, provides that, where an instrument is materially altered without the assent of all parties, it is avoided except as against a party who has himself made, authorized, or assented to the alteration. Held that, where one of the payees of a note, made payable to the payees jointly, indorsed it and mailed it to the maker, who placed his own name in

place of that of one of the payees, and struck out the word "jointly," there was no implied warranty on the part of the indorser extending to the changed condition of the note after it parted from her possession.

**5. SAME—ACTION—QUESTION FOR JURY.**

In an action on a note, *held* a question for the jury whether the note bore on its face such evidence of alteration as to charge the holder with notice of its infirmity.

**6. SAME—PAYMENT BY NOTE—RENEWAL.**

The mere giving of a renewal note does not operate as a payment, but the question is one of intention.

**7. SAME—CANCELLATION.**

By the express provisions of Negotiable Instruments Law, Laws 1897, p. 744, c. 612, § 204, where an instrument or any signature thereon appears to have been canceled, the burden is on the party who alleges that the cancellation was made unintentionally, or under a mistake or without authority.

**8. SAME—NOTICE OF DISHONOR.**

Negotiable Instruments Law, Laws 1897, p. 742, c. 612, § 180, provides that notice of dishonor may be waived either before the time of giving notice has arrived or after the omission to give due notice, and that the waiver may be express or implied. Defendant, who was one of the payees and accommodation indorsers on a note, indorsed another note "for renewal," and mailed it to the maker before maturity of the first note, and the maker inserted his name in place of that of one of the payees, and after maturity of the first note took it up by discounting the second one. The discounting bank had no notice until the time of the discount that defendant had indorsed the second note. *Held*, that the indorsement by defendant before the maturity of the first note did not amount to a waiver of notice of dishonor of the first note.

Appeal from Trial Term, Kings County.

Action by the First National Bank of the city of Brooklyn against Helen M. Gridley. From a judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, HOOKER, and MILLER, JJ.

C. A. Hitchcock. for appellant.

Robert H. Wilson, for respondent.

MILLER, J. The plaintiff seeks in the alternative to recover upon the defendant's alleged indorsement of two promissory notes, of which the following are, respectively, copies:

"20,000.00. Four months after date, for value received, I promise to pay to the order of B. F. Tracy, M. S. Driggs, T. F. Goodrich, and Mrs. H. M. Gridley, at the First National Bank Brooklyn, N. Y. twenty thousand dollars ($20.000.00).

"New York, Jan. 6, 1902.                           C. M. Coburn."

Indorsed:

"Pay First Nat'l Bank of Brooklyn, or order, for renewal only.
                                        "Mrs. H. M. Gridley.
                                        "Thos. F. Goodrich.
                                        "B. F. Tracy.
                                        "Marshall S. Driggs."

"20,000 00/100                           New York, May 6, 1902.

"Four months after date I promise to pay to the order of C. M. Coburn, Marshall S. Driggs, Thos. F. Goodrich, Mrs. Helen M. Gridley, and Benj. F. Tracy twenty thousand 00/100 dollars at the First National Bank, Brooklyn, N. Y., value received.                           C. M. Coburn.

"No.———. Due Sept 6."

Indorsed on the back:

"Pay First Nat'l Bank, Brooklyn, or order.        C. M. Coburn.
"For renewal:
    "Helen M. Gridley.
    "Tho. F. Goodrich.
    "B. F. Tracy.
    "Marshall S. Driggs.
        "No a/c."

No notice of dishonor of the note maturing May 6th is claimed to have been given the defendant, but on or about April 29th she indorsed a note of which the following is a copy:

"20,000.00.                                New York, May 6, 1902.

"Four months after date I promise to pay to the order of Cornelius Van Cott, Marshall S. Driggs, Thos. F. Goodrich, Mrs. Helen M. Gridley, and Benj. F. Tracy, jointly, twenty thousand $^{00}/_{100}$ dollars at First National Bank, Brooklyn, N. Y., value received.                    C. M. Coburn.

Indorsed:

"For renewal: Mrs. Helen M. Gridley."

And caused it to be mailed to the maker. This note was thereafter altered, without the knowledge, consent, or authority of the defendant, by substituting the name of the maker, "Coburn," in the place of the name of the payee, "Cornelius Van Cott," and by erasing the word "jointly," and, as thus altered, without the indorsement of said Van Cott, was delivered by the maker to the plaintiff on the 13th day of May. The transaction of said date is described by the president of the plaintiff as follows:

"When the note of May 6, 1902, was received by the First National Bank, it gave the check to Charles M. Coburn for twenty thousand dollars, less the discount for the four months. That would be about four hundred dollars less, I suppose—not exactly that, but pretty nearly that. Mr. Coburn added his own check for the difference, and paid the previous note with it—the note of January 6th. He took the previous note up by adding his own check to my check, and used it for paying the other note."

The note of January 6th was surrendered to the maker, Coburn, who canceled it. It does not appear that the plaintiff had any knowledge prior to said May 13th that the defendant had indorsed the note of May 6th. It may fairly be inferred that the defendant was an accommodation indorser, and that the manner in which the note was discounted sufficiently apprised the plaintiff of that fact. Natl. Park Bank v. G. A. M. W. & S. Co., 116 N. Y. 281, 22 N. E. 567, 5 L. R. A. 673; Smith v. Weston, 159 N. Y. 194, 54 N. E. 38.

The indorsement of all the payees was necessary to give good title to the transferee. Negotiable Instruments Law, Laws 1897, p. 730, c. 612, § 71; Allen v. Corn Exchange Bank, 87 App. Div. 335, 84 N. Y. Supp. 1001, and cases cited. The defendant, therefore, made the transfer of the note indorsed by her dependent upon the indorsement of said Van Cott and the other payees. She may have been unwilling to indorse a renewal note, except upon the condition that there should be an additional indorser in the person of said Van Cott. At any rate, she imposed such condition, and there are no facts that warrant the inference that the maker had authority to so alter the note as to render compliance with such condition unnecessary; and the claim that such authority

was given the maker by section 33 of the negotiable instruments law is so obviously unsound as to merit no discussion. There certainly was no implied warranty on the defendant's part extending to the changed condition of the note after it parted her possession.

But it is claimed that the warranty provided by section 116 of the negotiable instruments law applies to the condition of the note ·when discounted by the plaintiff, and not simply to its condition when it left the 'defendant's hands. If this is the effect of the statute, it should be indicated by unmistakable language. The statute provides that "every endorser who endorses without qualification, warrants to all subsequent holders in due 'course" that the instrument is genuine in all respects what it purports to be. We think the fair construction of the statute makes such warranty applicable to the condition of the instrument on leaving the hands of the indorser. If there could be any doubt about this, such doubt is removed by section 205, which provides:

"Where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided, except as against a party who has himself made, authorized or assented to the alteration and subsequent indorsers."

Obviously, the words "subsequent indorsers" mean those who indorse subsequent to the alteration. It is difficult to see how the defendant can be held liable for any act of Coburn in discounting a note which she had never indorsed, for such was the character of the note actually discounted. Coburn acted for himself in this transaction; he was the principal debtor; and I am unable to understand how in paying his own debt he can be said to have acted as the agent of a mere surety. If agency there was, it was to the knowledge of the plaintiff of such limited character as to preclude the defendant being bound by any departure from the strict terms of the agency.

The plaintiff, however, insists that it is a holder in "due course," and may therefore recover according to the "original tenor" of the note by virtue of section 205 of the negotiable instruments law. This position in inconsistent with the claim also made that the note of January 6th was not paid, else the plaintiff could not be a holder for value; and this illustrates the difficulties that beset a party who is unwilling to plant himself upon a given position. The plaintiff cannot recover on both of these notes, and it evidently is in 'such doubt as to the infirmities of each that it prefers to have the court undertake the burden of determining which is least objectionable. Moreover, upon the question whether the plaintiff is a holder in due course, a jury might say that the note bore upon its face such evidence of alteration as to charge the plaintiff with knowledge of its infirmity. But I shall assume that the plaintiff was a holder in due course. How is it possible to enforce payment from the defendant according to its original tenor? The note which she indorsed never had an inception, and it cannot be enforced according to its "tenor" without making Cornelius Van Cott a party to it, and the respondent does not suggest how that can be done. This is not a case where an alteration has been made in the amount of the note, in which case it is possible to charge a party in exactly the manner in which he expected to be charged. It is utterly impossible now to give vitality to the instrument according to its tenor at the time of the defendant's indorsement.

Other reasons are suggested by the respondent for sustaining the judgment on the note of May 6th, but we do not deem them of sufficient merit to require discussion.

But it is urged that the first note was never paid, and that by indorsing the renewal note the defendant waived demand and notice of dishonor of the first. Of course, the mere giving of a renewal note does not operate as a payment, but the Court of Appeals has declared that the question is one of intention. Matter of Utica Nat. Brewing Co., 154 N. Y. 268, 48 N. E. 521. The transaction upon its face was a discount of the second note and a payment of the first with the proceeds, and the plaintiff's officer so characterized it. The cancellation of the second note by the maker upon its surrender to him must certainly be regarded as having been made with the consent of the plaintiff. It was produced upon the trial in its canceled condition. At least, if the plaintiff claimed such cancellation to have been unintentional, by mistake, or without authority, the burden was upon it to establish such fact. Section 204 of the negotiable instruments law. Section 200 of the negotiable instruments law provides, by subdivision 5, that a negotiable instrument is discharged "when the principal debtor becomes the holder of the instrument at or after maturity in his own right," and it was the rule at common law that, in the absence of fraud or mistake alleged and proven, a cancellation and surrender of an obligation by the obligee to the obligor operates as a release and discharge of liability thereon. Larkin v. Hardenbrook, 90 N. Y. 333, 43 Am. Rep. 176; Kent v. Reynolds, 8 Hun, 559, cited with approval in Jaffray v. Davis, 124 N. Y. 164—170, 26 N. E. 351, 11 L. R. A. 710; Schwartzman v. Post, 94 App. Div. 474, 84 N. Y. Supp. 922, 87 N. Y. Supp. 872.

The respondent urges, on the authority of Leary v. Miller, 61 N. Y. 488, that the note of January 6th was not discharged unless the note of May 6th was a good note; but this begs the question, for the note of May 6th was a good note as to all of the parties except the appellant. The plaintiff has already received the sum of $15,000 upon it from the other indorsers, who, so far as appears, indorsed after the alterations had been made, and are therefore liable for the entire amount, unless the plaintiff has released them. Moreover, the plaintiff does not now produce the second note, and offer to surrender it, insisting upon the claim that it is bad, or, at most, nothing more than a broken promise to pay the first note, and that therefore the plaintiff will elect to recover upon the first note. On the contrary, the plaintiff asks for a judgment on the second note. Under these circumstances, it seems clear that the court was not warranted in holding as matter of law that the parties did not intend the transaction of May 13th to operate as a payment of the note of January 6th.

But in any event the failure of the plaintiff to notify the appellant of the dishonor of the note of January 6th relieved her from liability thereon. Her contract was to pay the note in case of its dishonor by the maker upon presentment when due, and notice thereof to her. Prior to the negotiable instruments law, the decisions in this state were to the effect that demand and notice were unnecessary where the indorser was himself the principal debtor, where he had taken a general assignment of the maker's property, where the indorser had expressly or by

98 N.Y.S.—29

implication waived demand and notice, and where the failure to make demand and give notice to the indorser could not possibly operate to his injury. Mechanics' Bank of New York v. Griswold, 7 Wend. 166; Commercial Bank of Albany v. Hughes, 17 Wend. 94; Sheldon v. Horton, 43 N. Y. 93, 3 Am. Rep. 669; Ross v. Hurd, 71 N. Y. 14, 27 Am. Rep. 1; Cady v. Bradshaw, 116 N. Y. 188, 22 N. E. 371, 5 L. R. A. 557; Nat'l Hudson River Bank v. Reynolds, 57 Hun, 307, 10 N. Y. Supp. 669; Smith v. Miller, 52 N. Y. 545. Waiver, however, will not be implied from doubtful or equivocal acts or language (Ross v. Hurd and Cady v. Bradshaw, supra), and injury will be presumed until it is made to appear that no damage could have resulted (Commercial Bank of Albany v. Hughes and Smith v. Miller, supra); and where excuse for nonpresentment and failure to give notice is relied upon, the facts furnishing such excuse must be alleged and proved (Clift v. Rodger, 25 Hun, 39). The only excuse for nonpresentment and failure to give notices of dishonor alleged is that the appellant waived presentment and notice of dishonor. It is unnecessary, therefore, to consider the point made by the appellant that the effect of the negotiable instruments law is to eliminate all excuses except those expressly enumerated in the statute. The plaintiff cannot argue, therefore, that the appellant was not harmed because that excuse is not allged, and, even if it were alleged, there is no proof to overcome the presumption of injury. Receiving no notice of dishonor, the appellant had the right to rely upon the belief that the note indorsed by her, and containing the indorsement of all the other payees stipulated by her, had been used to pay the note of January 6th. Had she received timely notice of dishonor, an investigation might have apprised her of the failure of the payee Van Cott to indorse; whereupon she may have been able to compel payment of the note by the maker. But it is not necessary to speculate. Upon the state of the pleadings and proof, the plaintiff must stand or fall upon the allegation of waiver.

The statute (section 180 of the negotiable instruments law) has not, as the respondent seems to think, changed the law on this subject. It is not claimed that the appellant herself did anything after May 6th from which a consent to remain liable on the note then dishonored can be inferred; but a waiver is sought to be implied from her indorsement "for renewal" of the note of May 6th, afterwards altered, some days before the maturity of said first note. There is no pretense, however, that the plaintiff had knowledge of such indorsement prior to May 13th, or that it was induced by any act of the appellant to forego giving notice of dishonor. The respondent claims that a waiver can be implied from a transaction not between the parties of which the holder is totally ignorant. The authorities relied upon in support of this contention do not sustain it. They are Sheldon v. Horton, Leary v. Miller, and National Hudson River Bank v. Reynolds, supra; but in each of these cases the act of the indorser from which the waiver was implied was known to the holder before maturity of the note, and the opinion in each case makes a point of that fact, and in Leary v. Miller point is also made of the fact that the question was not raised on the trial. Research of counsel, supplemented by our own, has failed to disclose a

single case in which it has been held that a waiver could be implied from some act of an indorser not known to the holder before maturity of the note. On the contrary, it has been distinctly held that a notice of dishonor given by a stranger was ineffectual to charge an indorser. Chanoine v. Fowler, 3 Wend. 173. So far as I am able to discover, the doctrine of this case has never been questioned, but has been distinctly approved. See Walmsley v. Acton, 44 Barb. 312; Lawrence v. Miller, 16 N. Y. 235. Moreover, the negotiable instruments law (sections 161–162) provides that the notice may be given by or on behalf of the holder, or a party who might be compelled to pay it to the holder, or an agent. The argument of the respondent is based upon the supposition that the defendant knew the note was not to be paid, and that she need not be informed of a fact which she already knew. If this logic is good, it would necessarily follow that, if an indorser has timely notice of dishonor, the means and the person by whom such notice is given are immaterial. To be sure a waiver may be either express or implied. It is express when there is an agreement between the parties to the effect that the holder need not make a demand or give notice of dishonor; it is implied when the acts of the indorser communicated to the holder are such as to give the holder the right to believe that the indorser consents that there shall be no presentment and no notice of dishonor. In the latter case it is held that, even though the indorser did not intend so to consent, if the act was such as to lead the holder to so understand, and by reason thereof to forego making demand and giving notice of dishonor, the transaction in law amounts to a waiver. See cases cited supra; also, Cayuga County Bank v. Dill, 5 Hill, 403. To be sure a waiver is nothing more than a relinquishment of some right, which, being personal, requires no consideration for its support. It does not necessarily rest upon the doctrine of estoppel, but, according to the logic of all the cases, it results from an agreement between the parties, either express or implied. In the leading case of Sheldon v. Horton, supra, Judge Andrews prefaces his discussion with the declaration that the statement relied upon as constituting a waiver was communicated to the plaintiff, and that the defendant understood that such communication was to be made. Suppose the statement there relied upon had been made to a stranger without any intention of its being communicated to the plaintiff, and that in fact it was not communicated, could it be contended that it would have constituted a waiver? If so, we have only to carry the supposition one step further, and have the reductio ad absurdum. Suppose the statement had been a soliloquy susceptible of being proven, is it possible that the defendant could not have changed his mind?

The argument thus far has proceeded upon the theory that the appellant did know that the note was not to be paid, but in my judgment the proof fails to establish this proposition. It seems to me that the only consent to be implied from her act of indorsement was a consent that if Cornelius Van Cott, Thomas F. Goodrich, B. F. Tracy, and Marshall S. Driggs indorsed the note it should be used to renew the note maturing May 6th. She did not knew that all would indorse, and, as it turned out, one of them did not, and it seems to me, therefore, that,

even had her act been communicated to the plaintiff, it would not have been excused from making demand and giving notice of dishonor upon the maturity of the note of January 6th, except a new note, indorsed in the manner stipulated by the appellant, were presented. This being so, I am wholly unable to comprehend upon what principle an absolute waiver can be implied from an equivocal act not communicated to the plaintiff. It is necessary in commercial transactions that the rules of liability of parties to negotiable paper should be fixed and certain. It is better that such rules be arbitrary than that they lack precision and certainty. The plaintiff cannot be permitted to succeed upon the proof in this case without introducing a rule fatal to the accuracy with which the liability of indorsers may be determined.

I recommend that the judgment be reversed, and a new trial granted; costs to abide the event. All concur; HIRSCHBERG, P. J., in result.