In re ASTELL ENGINEERING & IRON WORKS, Inc.

Appeal of MULRENAN.

(Circuit Court of Appeals, Second Circuit. October 24, 1922.)

No. 20.

1. Corporations ⬡=477(6)—Chattel mortgage, given without written consent of holders of two-thirds of stock, void under New York statute.

A chattel mortgage, executed by a New York corporation, but without the written consent of the holders of two-thirds of the stock, as required by Stock Corporation Law N. Y. § 6, held void.

---

⬡=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Bankruptcy ⬤═185—Trustee may sue to have chattel mortgage declared void.**
    A trustee in bankruptcy may bring an appropriate proceeding to have
    declared void a chattel mortgage as being executed without the written
    consent of the holders of two-thirds of the stock, as required by Stock
    Corporation Law N. Y. § 6.

Appeal from the District Court of the United States for the Eastern
District of New York.

In the matter of the Astell Engineering & Iron Works, Inc., bankrupt. From an order and decree (278 Fed. 743) confirming the report
of a special commissioner, holding a chattel mortgage made and delivered by the bankrupt in favor of James Mulrenan, to be "invalid and
void," said Mulrenan appeals. Order and decree affirmed.

James S. Regan, of New York City, for appellant.
Abraham L. Doris, of New York City, for appellee.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MAYER, Circuit Judge. In January, 1921, the now bankrupt corporation needed funds. The total number of its shares of capital
stock was 200. On January 19, 1921, there was a special meeting of
the board of directors of the bankrupt, at which were present Richard
S. Groves, the holder of 118 shares, of which 5 shares were later transferred to Frank Groves, George Brown, the holder of 78 shares, and
James S. Regan, the holder of 4 shares. It will thus be seen that
Brown was the holder of more than one-third of the capital stock of
the corporation. The minutes of the meeting of the board of directors
show that Brown was then discharged as secretary and treasurer of
the company and that Frank Groves was elected to these offices in his
place. At the same time the board of directors authorized the president of the company to borrow any amount, up to $2,000, upon the best
terms possible, and to execute a chattel mortgage on the property of
the company as security for the debt, as well as a promissory note in
the name of the company for the same. Brown did not vote on this
question, and he testified that, before the meeting was had, he objected
to mortgaging the company's property, but that at the meeting he did
not vote, as he assumed that his views, expressed prior to the meeting,
were understood by the other directors. There is some conflict in the
testimony as to details, but the undisputed fact remains that Brown, the
holder of more than one-third of the capital stock, did not vote on this
occasion. The testimony clearly indicates that, by his failure to vote, he
did not acquiesce in nor consent to the resolution authorizing the borrowing of money and the execution and delivery of any chattel mortgage which might be necessary as security. It is apparent that Brown,
who had just been discharged as secretary and treasurer, was not in
harmony with the other directors and stockholders.

On January 25th there was a stockholders' meeting, and while, as
the report of the special commissioner states, "there seems to be some
doubt as to just what did happen at the stockholders' meeting," it is
plain that Brown did not consent in writing nor by his vote to the giv-

ing of the chattel mortgage contemplated by the resolution of the board of directors. Two officers of the company testified that the stockholders, including Brown, ratified all acts and resolutions of the board of directors for the previous years. Brown's testimony was, in effect, to the contrary. On January 25, 1921, the bankrupt made and delivered to Mulrenan its promissory note for $1,100, dated that day, and payable six months thereafter, with interest. Contemporaneously the bankrupt delivered to Mulrenan a chattel mortgage upon all the property then owned by it and in its possession at Nos. 224–226 Twenty-Fifth street, Brooklyn. Mulrenan gave Groves, the president of the bankrupt, $1,000 in cash.

[1] A petition in bankruptcy was filed against the Astell Company on May 6, and on June 29, 1921, Robert M. Gilmore became trustee. By appropriate proceedings, the chattel mortgage was attacked as void, and was so held both by the special commissioner and the District Court. From the foregoing outline of the facts it affirmatively appears that there was not at any time the consent to the execution and delivery of the chattel mortgage by the holders of two-thirds of the capital stock of the corporation, as required by section 6 of article 2 of the Laws of New York of 1909 (Consolidated Laws, c. 59). It is therefore unnecessary to discuss the New York cases, which preceded and are mentioned in the case of In re Post & Davis Co., 219 Fed. 171, 135 C. C. A. 69. When the Post & Davis Co. Case, supra, was decided, the court pointed out that:

"To hold that written assent of two-thirds of the stockholders may be dispensed with in this case would go * * * further than any decision of the New York Court of Appeals. * * *"

After the decision of that case, the New York Court of Appeals, in Leffert v. Jackman, 227 N. Y. 310, 125 N. E. 446, reviewed the previous cases decided by that court, and it is quite clear that it now must be regarded as settled that the affirmative requirements of the statute as to the consent of the holders of two-thirds of the capital stock must be complied with.

Karasik v. People's Trust Co. (D. C.) 252 Fed. 324, affirmed 252 Fed. 337, 164 C. C. A. 261, does not in any manner relax the rigor of the rule as applied to the consent referred to. That case dealt, inter alia, with the failure to file the consent, as required by the statute, and cannot be regarded as modifying the Post & Davis Co. Case, supra.

The case at bar well illustrates the proposition that, if the courts were to hold a mortgage valid where the holder of more than one-third of the capital stock had plainly indicated his refusal or failure to consent, the most vital of the protective and safeguarding features of the statute would be destroyed by judicial construction.

[2] That a trustee in bankruptcy may bring an appropriate proceeding to have such a chattel mortgage declared void is no longer open to question. In re Post & Davis Co., supra; Karasik v. People's Trust Co., supra; Leffert v. Jackman, supra.

Order and decree affirmed, with costs.