## In re BRONX ICE CREAM CO., Inc.

### RUBEL CORPORATION et al. v. IRVING TRUST CO. et al.

### No. 444.

Circuit Court of Appeals, Second Circuit.

Aug. 4, 1933.

Samuel C. Duberstein, of Brooklyn, N. Y. (Samuel C. Duberstein, Herman G. Robbins, Max Schwartz, and Aaron D. Duberstein, all of Brooklyn, N. Y., of counsel), for appellants.

Ward & Palzer, of New York City (Murray C. Bernays, George G. Ernst, Nathaniel J. Palzer, and Michael S. Gleason, all of

New York City, of counsel), for appellee Irving Trust Co. as trustee.

Morris Pottish, of New York City, for appellee Robert Rubin.

Henry Ward Beer, I. Maurice Wormser, and Nathan Burkan, all of New York City, Samuel C. Duberstein and Charles H. Hyde, both of Brooklyn, N. Y., and Samuel Leavitt, Hugh Gordon Miller, and Henry Weinberger, all of New York City, Committee of the New York County Lawyers' Association to consider the matter of receiverships, amici curiæ.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The Bronx Ice Cream Company was adjudicated a bankrupt and its assets, aside from a claim to set aside an alleged unlawful preference in favor of a creditor named Rubin, were nominal.

On November 10, 1932, a meeting of the creditors was held for the election of a trustee. At an adjourned meeting on November 15th, the referee declared Sanford S. Levy elected.

About three months before the bankruptcy, the bankrupt executed a chattel mortgage covering certain wagons, machinery, and fixtures stated to have a value of approximately $7,000. This mortgage was given to Rubin and Abramowitz to secure the payment of $1,000 actually advanced by the mortgagees to the mortgagor, and $3,680 said to be due from the bankrupt for horses it had hired from them. The balance on this claim at the time of the bankruptcy was $2,989.60. The claim of Rubin and Abramowitz against the bankrupt was afterwards assigned to Robert Rubin. Upon a default in the payment of the alleged indebtedness secured by the mortgage, a sale was had. It was conducted by Morris Pottish, the attorney for Robert Rubin, and the property was bought in at the sale for $2,000 by one Rothbaum, who was a relative of Rubin.

At the creditors' meeting there were on file with the referee the following proofs of debt and powers of attorney:

Kottler, who was counsel for Rubel Corporation, the petitioning creditor, stated at the meeting that the chattel mortgage was given within four months of bankruptcy and at a time when all the parties knew the bankrupt was insolvent, that the mortgage was not authorized by any stockholders or directors meeting, and that the mortgaged property was not sold by an official auctioneer. He said that he intended to bring an action to set aside the mortgage. Pottish, the attorney for Rubin, nominated Irving Trust Company for trustee, and Pator, an attorney for the Rubel Corporation, nominated Sanford S. Levy. The referee, upon the objection of Kottler to the voting of Rubin's claim on the ground that the latter had obtained a preference within the four months' period, held that it was improper for Pottish to vote Rubin's claim because the latter might be in the position of a creditor who had received a voidable preference. The referee himself had proxies from all the creditors other than Rubel Corporation and Rubin, and these proxies, as appears above, covered claims aggregating $1,012.72. These proxies authorized the referee to vote in favor of the election of Irving Trust Company as trustee and were on the regular forms made pursuant to Local Rule 22 of the United States District Court for the Southern District of New York. Pottish requested that the referee vote the claims, but the referee declined to vote them and, having excluded Rubin from voting, declared that Sanford S. Levy, who received the vote of the Rubel Corporation (the only creditor voting), was the duly elected trustee.

Thereafter the creditor Rubin made a motion to vacate the order appointing Levy trustee. In the affidavit of his attorney it was stated that Rubin's vote for the Irving Trust Company should be counted and that the claims of the creditors for which Referee Olney held proxies should be also cast in favor of it so that Irving Trust Company should be appointed trustee. This motion was denied. Thereafter Rubin petitioned for a review of the order appointing Levy trustee, and of the later order declining to vacate the appointment and to appoint

| Name of Creditor | Amount of Debt | Proxy |
|---|---|---|
| Sam Katz | $ 86.51 | Referee P. B. Olney, Jr. |
| S. & S. Cone Corporation | 61.65 | Referee P. B. Olney, Jr. |
| Atkinson Chocolate Company, Inc., | 392.51 | Referee P. B. Olney, Jr. |
| S. Gumpert Co., Inc., | 127.05 | Referee P. B. Olney, Jr. |
| Allied Salt Co., Inc., | 324.00 | Referee P. B. Olney, Jr. |
| F. Bishoff, Inc., | 21.00 | Referee P. B. Olney, Jr. |
| Robert Rubin | 2,989.60 | Morris Pottish |
| Rubel Corporation | 1,326.92 | Jacob A. Freedman or Louis R. Pator |

the Irving Trust Company and alleged error on the part of the referee in refusing to vote the claims for which he held proxies in favor of the trust company and in barring the vote on Rubin's claim.· The referee made a certificate pursuant to General Order 27 (11 USCA § 53) and certified the question whether he had erred in making his order approving the election of Levy as trustee and in making his later order denying the motion of Rubin to vacate the order and to appoint Irving Trust Company. In his certificate he stated that he had interrogated Pottish as to his motives in desiring that the Irving Trust Company be appointed trustee and that it clearly appeared that Pottish desired that appointment "because he felt that his clients Rubin and Rothbaum would have a better chance of not having to respond in damages or by way of settlement if the Irving Trust Company were trustee than if Mr. Levy were." It was for this reason that the referee had refused to count the vote on Rubin's claim and had declined to vote the claims for which he held proxies in favor of the Irving Trust Company. The District Judge sustained the petition to review and ordered that the appointment of Levy as trustee be vacated and that Irving Trust Company be appointed. He held that the referee had no right to refuse to vote claims for Irving Trust Company for which he held proxies and said that there was no good reason why Rubin should not have been permitted to vote, inasmuch as his claim was in proper form, and that Rubin could not be denied representation on the mere assertion of another creditor that a preference suit was contemplated against him. The judge added that Rubin only desired to vote "for the court's own standing trustee," that it was not suggested that the trust company was other than disinterested and impartial, and that "it would seem as if such a trustee would be better able to determine whether a suit should be brought on behalf of all creditors than one chosen only at the instance of the creditor pressing the claim." From the order of Judge Coxe appointing Irving Trust Company, Rubel Corporation, the petitioning creditor, and Levy, the original trustee, have appealed. They contend:

That the appointment of the Irving Trust Company was invalid because General Order 39 of the Supreme Court (11 USCA § 53) and Local Rule 22 of the District Court for the Southern District of New York are illegal.

General Order 39 reads as follows:

"Representation of Creditors by Receivers or their Attorneys

"Neither a receiver nor his attorney shall solicit any proof of debt, power of attorney, or other authority to act for, or represent, any creditor for any purpose in connection with the administration of an estate or the acceptance or rejection of any composition or extension proposal. The local bankruptcy court may, however, whenever a banking institution is under local rule or practice always appointed receiver in cases requiring the services of a receiver, by local rule approved by a majority of the circuit judges of the circuit, provide that notice may be given to the creditors of the availability of such institution to act as trustee if elected, and may provide means to facilitate the creditors in filing and voting their claims in favor of the election of such institution as trustee."

Local Rule 22 reads as follows:

"First Meeting of Creditors.

"The Referee shall promptly call the first meeting of creditors to be held at the earliest practicable date. Where a list of creditors with their addresses is filed with the Referee, the latter shall, without waiting for the filing of schedules, call such first meeting of creditors. The Referee shall mail to each creditor at such time as the Court may direct, or in the absence of such direction, with the notice of the first meeting, a form of proof of claim and proxy naming the Referee as special proxy to vote the claim in favor of the election of the standing Receiver as Trustee. By notice indorsed on or mailed with such form the Referee shall advise the creditors regarding the availability of such standing Receiver generally to act as Trustee, and how the proof of claim may be filed, with or without the proxy. The notice shall state that the creditor is not required to vote for such standing Receiver as Trustee. The Senior District Judge shall from time to time prescribe the form of the proof of claim and proxy and of the notice to be thus forwarded to creditors. This rule, in so far as it relates to the sending of proofs of claim and proxies, applies only in cases in which the bankrupt's business is located in the counties of New York and Bronx and the cities of Yonkers, White Plains, Mount Vernon and New Rochelle."

■ The foregoing local rule was approved by a majority of the Circuit Judges of the Second Circuit and Irving Trust Company was appointed standing receiver. In accordance with the provisions of the local rule, forms

of proof of claim and of proxies, and also statements advising the creditors of the availability of the standing receiver to act as trustee, were mailed by the referee to the creditors with the notice of the first meeting. The forms of proof of claim, after providing for a statement of the indebtedness and other legal requirements, contained the following power of attorney: "III. The claimant appoints Hon. Peter B. Olney, Jr., Referee, proxy and attorney in fact, with full power to substitute in his place, any other Referee acting in connection with the bankrupt estate and authorizes him or his substitute in the name and on behalf of the claimant, to vote at the first or any subsequent meeting or meetings of creditors, or at any adjournments thereof, in favor of the election of the Irving Trust Company as Trustee of the bankrupt's estate, as fully as the claimant could do if present. Said attorney shall have no other authority or power to act for the claimant. All powers of attorney hereinbefore executed by the claimant in this proceeding, in so far as they authorize any person or persons to vote on the claimant's behalf in the choice of a Trustee, are hereby revoked."

The statement advising the creditors of the availability of the standing receiver to act as trustee which was mailed was in the following form:

"Read Carefully Before Signing

"By a recent amendment to the General Orders in Bankruptcy, the Supreme Court of the United States has authorized the District Courts of the United States, with the approval of a majority of the Judges of the Circuit Court of Appeals, to provide means to facilitate the creditors in filing and voting their claims in favor of the election of a banking institution as trustee, whenever it is the practice in the District Court to appoint such institution Receiver in all cases requiring the services of a receiver, and to advise creditors of the availability of such institution to act as Trustee. This notice and proof of claim are sent to you pursuant to the Rules of the United States Court for the Southern District of New York, adopted and approved in accordance with the aforementioned amendment of the General Orders of the Supreme Court of the United States.

"In order to entitle the creditor to vote at the election of a trustee of the bankrupt estate, his claim must be filed and allowed and he must be present or represented by proxy at the meeting at which the Trustee is elected. Since January, 1929, it has been the practice of the Court to appoint the Irving Trust Company Receiver in all bankruptcy cases requiring a receiver. The Irving Trust Company is available generally to act as Trustee, and has in the past been elected Trustee by the creditors in a majority of the cases in which it was appointed Receiver by the Court. If you wish to have the Irving Trust Company act as Trustee in this case, you may sign, swear to and return, before the date of the meeting notice of which is enclosed herewith, the following proof of claim which contains a proxy clause authorizing me to vote your claim, if allowed, in favor of the Irving Trust Company as Trustee. If you do not wish your vote to be recorded, you should strike out Clause III below.

"Upon return to me of the following proof of claim (within the time prescribed by the Bankruptcy Act of 1898, as amended, for the filing of claims) it will be filed in this proceeding and allowed if in proper form, unless notice of objections is given so that you may appear and be heard. If the claim is allowed dividends payable to you will be remitted without charge by this office.

"Peter B. Olney, Jr.
"Referee

"19 Rector Street, N. Y. City
"Address."

Local Rule 22 is in accord with General Order 39 and provides a means of facilitating the creditors in voting their claims in favor of the banking institution which, under local practice, is always appointed receiver in bankruptcy. It is said that the means of facilitating which have been provided ought not to be permitted, because they interfere with the control of creditors over the election of trustees, and because they involve a solicitation on behalf of the receiver forbidden by General Order 39. Neither objection is sound.

Nothing appears in the statement mailed to creditors which requires the creditor who receives it to give a proxy in favor of the Irving Trust Company. Indeed, the circular expressly says: "If you do not wish your vote to be recorded, you should strike out Clause III below." The means adopted save creditors from paying the fees which used frequently to be paid to collection agencies holding proxies and give the estate the advantage of a continuous administration. The circular and form of proxy sent to creditors undoubtedly promote the selection of the Irving Trust Company as trustee, and such was the intention of those designing the plan; but nothing has been said or done to prevent the creditors from acting as they choose. The

argument that there is an unlawful solicitation, not only ignores the last clause of General Order 39, but assumes that there can be solicitation in no circumstances. The chief objection to solicitation is that it tends to commercialize and vulgarize the legal profession and, when employed in connection with the choice of a trustee, tends to make the choice depend on the energy and speed of competitive groups scrambling for business, rather than upon any process rationally adapted to the making of a wise choice. Notifying creditors officially that an experienced standing receiver is available to act as trustee and that it has in other cases been selected by creditors is a far cry from the sort of importunities which the first clause of General Order proscribes.

■ It is further said that Local Rule 22 is invalid because it results in making the referee an attorney in fact for special creditors and in creating a conflict between his duty as proxy and his judicial duty. It is also suggested that the proxies may give him a disqualifying interest in the case and because of the provisions of section 39b of the Bankruptcy Act (11 USCA § 67 (b) prevent him from acting as referee. But it is clear that the proxies created no conflict between his duties to the creditors executing them and his judicial duties. They authorized him to vote the claims for the Irving Trust Company and to do nothing else. They required no more than the discharge of a simple ministerial act and involved no exercise of discretion. It is likewise evident that the proxies give the referee no financial or other personal interest in the case such as would prevent his acting as referee.

■ Appellants also take the broad ground that we should hold invalid the last clause of General Order 39 which Local Rule 22 was drawn to carry into effect. On the merits, we see no basis for such a decision but, in any event, only the Supreme Court which, acting pursuant to section 30 of the Bankruptcy Act (11 USCA § 53), prescribed the general order should declare it unlawful. We certainly cannot with propriety hold General Orders promulgated by the Supreme Court unlawful. For the foregoing reasons, General Order 39 and Local Rule 22 are held valid.

■ The final question is whether the referee properly declined to vote the claims of the creditors whose proxies he held. It may be argued that each proxy was a mere power of attorney and that on the face of the paper the creditor executing it only "authorizes" the referee "to vote * * * in favor of the election of the Irving Trust Company as trustee of the bankrupt's estate." But Local Rule 22, adopted in furtherance of General Order 39, was plainly designed for registering the votes in favor of the Irving Trust Company of those creditors who had signed proxies running to a referee. In no other way can the objects of the rule be attained or the "means to facilitate the creditors in * * * voting their claims in favor * * * of such institution * * *" (General Order 39) be effective. Only some disqualification of the trust company or a refusal on its part to serve would, we think, justify the referee in declining to vote the proxies. There was no disqualification or declination here and the referee should, therefore, have voted the claims. Had he done so, there would have been an election of the Irving Trust Company if the Rubin claim had been voted, for the proxies held by the referee and Rubin's claim represented a majority of the creditors in number and amount. We do not need to pass on what Judge Hough once called "the very vexed question * * * how far the referee is bound to go in the liquidation and allowance of claims before proceeding to the election of a trustee." In re Milne, Turnbull & Co. (D. C.) 159 F. at page 282. See, also, In re Rosenfeld-Goldman Co. (D. C.) 228 F. at page 923. In the present case, Rubin had filed a proof of claim in proper form. If the petitioning creditor wished to prevent him from voting, it should have interposed objections as such and requested a hearing in order to introduce evidence in support of the objections. Nothing was really done but to make arguments and threaten a suit. Some of the statements made by Mr. Kottler in arguendo, relating to the alleged failure to obtain the consent of two-thirds of the stockholders of the bankrupt to the execution of the chattel mortgage, were most serious, if established (In re Astell Engineering & Iron Works (C. C. A.) 284 F. 967; Leffert v. Jackman, 227 N. Y. 310, 125 N. E. 446), and the reply to the statements by Mr. Pottish was inadequate. But the claim was prima facie valid and it seems probable that as matters stood Rubin should have been allowed to vote it. Had it been counted, the Irving Trust Company would have been elected trustee if the referee's proxies had been voted, and if they had not been voted, there would have been no election for lack of a majority in number and amount. Even if the Rubin claim should not have been counted, yet the referee's proxies would have embraced a majority of the creditors in number, so that Levy could not have been elected trustee. Thus the voting of

the proxies of the referee would have either resulted in the election of the trust company or in no election, with a duty of the court to appoint. The referee by excluding the vote on Rubin's claim and declining to vote his own proxies prevented either event from happening. While he acted from most conscientious motives, we think his failure to vote the proxies was, under the circumstances, erroneous.

We have gone into considerable detail in order to show that the District Judge was either bound to approve the election of the Irving Trust Company because a majority of creditors in number and amount should have been counted in its favor, or else was entitled to appoint it because such a majority had failed to signify their choice. He stated in his memorandum both that the referee should have voted his proxies and that Rubin should have been permitted to vote his claim. In his order he "appointed" the Irving Trust Company trustee of the estate. The order, therefore, should stand either as an approval of what the judge regarded as a valid election, or as an appointment where the creditors had failed to elect. In the circumstances, there can be no reason for calling another creditors' meeting, and the appellants have expressly stated that the calling of such a meeting is not urged (Appellants' Brief p. 33). While the characterization of the trust company in the memorandum of the judge as "standing trustee" was inadvertent and clearly meant "standing receiver," his conclusion that the referee might not refuse to vote the claims for the Irving Trust Company was in accordance with the purpose of General Order 39 and Local Rule 22 and we think sets forth the proper practice.

The order of the District Court is affirmed.