## HILL *against* BEEBE.

Receiving the debtor's promissory note for a debt does not merge or extinguish the demand.

Nor is a chattel mortgage extinguished by a second mortgage on the same property to secure the debt mentioned in the first.

And where the first mortgage was to secure a debt evidenced• by the note of the mortgagor, and after default the note was surrendered and a new note given for its amount and some additional indebtedness, and a second mortgage on the same property·executed to secure the amount; *Held*, that the first mortgage was not extinguished.

Whether an express agreement between the parties that the second mortgage should be in satisfaction of the first would extinguish the latter, *quere.*

But such an agreement cannot be inferred from the fact that the second was accepted, the first not having been surrendered or canceled.

The omission to re-file a copy of a chattel mortgage, as prescribed by the statute (*Laws of* 1833, *p.* 402, § 3), does not affect its validity as against a subsequent mortgagee with notice.[1]

ACTION commenced in July, 1853, against Samuel Beebe, to recover the value of a mare, three cows and other live stock, alleged to have been wrongfully converted by him. The defendant claimed that the property belonged to one Franklin Beebe, and that he possessed it as his bailee. The cause was tried at the Chenango county circuit, held by Mr. Justice Mason. It was conceded that the stock in question was owned in 1851 by one William Marvin. The plaintiff read in evidence a chattel mortgage, dated the 10th of May, 1852, executed by Marvin to the plaintiff upon the property in controversy and other stock, to secure the payment of $119.24 and interest by the first of the ensuing November.

---

[1] *Gildersleeve* v. *Langdon* 73 N. Y. 609.

It contained the usual clause that if the debt was not paid or if the mortgagee should at any time deem himself insecure, he might take possession of and sell the property to satisfy the demand. This mortgage described the property in controversy as subject to a mortgage, dated August 12, 1851, executed by Marvin to one Seneca Beebe, to secure the payment of $44.75. The plaintiff proved that the mortgage executed to him was duly filed in the town clerk's office on the day of its date, and a copy thereof duly filed on the 18th of April, 1853, with a statement that $104.80 remained due thereon. He further proved that the property was in the possession of Marvin in April, 1853; that on the 30th of June, in that year, it was in the possession of the defendant, from whom it was demanded by the plaintiff's agent by virtue of the mortgage; and that the defendant refused to deliver it, alleging that he held it as the bailee of Franklin Beebe, the owner.

The defendant read in evidence a mortgage, dated the 12th of August, 1851, executed by Marvin to Seneca Beebe upon the property in question. This mortgage recited that the mortgagor was indebted to the mortgagee in the sum of $44.75, upon a note for that amount bearing even date with the mortgage, and by its terms transferred the property to secure the payment "of said debt." It further provided that if Marvin should pay "the said sum of $44.75 with interest," by the first of December thereafter, the transfer to be void; but in case of non-payment at that time, the mortgagee was authorized to take possession of and sell the property and apply the avails in payment of the debt. It contained also a clause that if the mortgagee should at any time deem himself insecure, he might take possession of and sell the property, applying the proceeds to the satisfaction of the debt. A copy of this mortgage was duly filed in the town clerk's office the 14th of August, 1851; but no copy and statement were filed afterwards. Seneca Beebe, the mortgagee, was sworn for the defendant, and

testified that the $44.75, mentioned in the last named mortgage, was owing to him from Marvin for medical services and the use of land, and that the note was executed to him for this debt.    That in June, 1853, he sold the property in question to Franklin Beebe by virtue of the mortgage, last above mentioned, for the price of $45.    On his cross-examination he testified that Marvin executed to him a second mortgage on the same property, about a year after the date of the first; that this was given to secure the payment of the same debt mentioned in the first mortgage, and a small additional amount existing in book account; and that when it was given the note mentioned in the first mortgage was delivered to Marvin, its amount being included in a note then executed by Marvin, which was mentioned in the second one.    That when he received the second mortgage he did not give up or relinquish the first or his claim under it, nor agree to do so; that the first mortgage was then present and it was expressly agreed that he should retain it, and that the copy should remain on file with the town clerk; and that no part of the debt mentioned in the first mortgage was paid when the second was given or subsequently.    The counsel for the plaintiff read this second mortgage in evidence.    It bore date the 19th of August, 1852, was upon the same property described in the first, and to secure the payment of $53.91 upon a note bearing even date.    In other respects its terms were similar to those of the first mortgage to Seneca Beebe, except that the time for payment was the first of January, 1853.    The mortgagor, Marvin, was sworn as a witness for the plaintiff, and testified that when this second mortgage was executed nothing was said about the first one; that the latter was not taken up nor the copy taken from the town clerk's office.

At the close of the evidence, the counsel for the defendant moved that the plaintiff be nonsuited, on the following grounds: 1st. That Seneca Beebe's title to the property by virtue of the first mortgage to him had become absolute

when the mortgage to the plaintiff was executed, and that Marvin had then no title to the property; 2. That the surrender of the note and the taking of the second mortgage did not extinguish the first, nor affect the right of Beebe to take possession of and sell the property by virtue of it; 3. That the surrender of the note and the taking of the second mortgage would not extinguish the first, unless there was a release of, or a covenant not to enforce it. The court denied the motion and decided that it was a question of fact to be submitted to and decided by the jury, whether it was the understanding and agreement between the parties when the second mortgage to Seneca Beebe was given, that the first should be extinguished. The counsel for the defendant excepted. The defendant's counsel requested the court to instruct the jury as follows: 1. That the title of Seneca Beebe to the property had become absolute when the mortgage to the plaintiff was executed, and that the latter, for this reason, acquired no lien upon or interest in the property; 2. That the giving of the second mortgage and the surrender of the note did not extinguish the first mortgage, unless there was an *express* agreement to relinqush it; 3. That the omission of Seneca Beebe to re-file a copy of the mortgage to him before the expiration of the year, rendered it inoperative as against subsequent *bona fide* purchasers and mortgagees, but did not affect its validity as against the plaintiff claiming under the mortgage to him. The court refused to so charge, and instructed the jury, in substance, that it was a question to be determined by them whether it was the intention and agreement between Seneca Beebe and Marvin, at the time the second mortgage to the former was executed, that the first should be extinguished and cancelled; that this was to be determined from the acts of the parties and all the evidence in the case; that although the rule of law was that the title to chattels mortgaged became absolute in the mortgagee on default of payment by the time specified hterefor, yet that when the

parties to the mortgage had treated it as an existing mortgage, as a mere lien on the property, after default, the mortgagor still retaining the possession and control of the property, the law would so regard it and protect the rights of the mortgagor; that if they found for the plaintiff, their verdict should be for the value of the property to the extent of the amount due on plaintiff's mortgage. In response to the second request above stated, the judge charged that, in order to extinguish the mortgage, the jury must find from the evidence in the case that there was an agreement to that effect. As to the third proposition above mentioned, the court refused to charge as therein requested, on the ground that the facts of the case did not present any such question. The counsel for the defendant duly excepted to the refusal of the court to charge as requested, and to each portion of the charge as given. The jury rendered a verdict in favor of the plaintiff for $115.75, upon which judgment was perfected. The judgment was affirmed at a general term of the supreme court in the 6th district. The defendant appealed to this court.

*John Wait*, for the appellant.

· *Henry R. Mygatt*, for the respondent.

COMSTOCK, J. The plaintiff claims the property in question under a mortgage from Marvin, dated May 10, 1852, which by its terms was subject to a prior one given to Seneca Beebe, dated August 12, 1851. Beebe, afterwards, on the 19th of August, 1852, took another mortgage from Marvin to secure the same debt included in his first one, and a few dollars of book account in addition. The defendant, at the commencement of the suit was in possession of the property under a title derived from Seneca Beebe. If he can stand on the first mortgage his title is prior to the plaintiff's and must prevail. If he cannot he

Hill *against* Beebe.

has no defence under the last one, for that is junior to the mortgage given to the plaintiff.

The question principally litigated on the trial was whether the first mortgage given to Beebe was extinguished by taking the last one; and the jury were directed to find from the evidence whether such was the agreement between the parties at the time the last mortgage was taken. But it appeared, or the fact was assumed, that Beebe had not renewed his first mortgage by filing a copy and statement of the amount due before the expiration of a year, as required by the statute concerning personal mortgages (*Statute of* 1833, *p.* 402, § 3); and the judge was requested to instruct the jury that the omission to do so only rendered the mortgage inoperative as against subsequent purchasers or mortgagees in good faith, but did not affect the rights of the plaintiff. The judge refused so to charge on the ground that the facts of the case did not present such a question. This was erroneous.

The plaintiff was not a *bona fide* mortgagee, and therefore not within the protection of the statute referred to. He had notice of the prior mortgage to Beebe, and took his own in terms subject to it. Beebe's mortgage was therefore a charge on the property, and so remained until it should be paid or extinguished by some act of the parties. The omission to renew it did not impair its force as against a person standing in the situation of the plaintiff. (*Sanger* v. *Eastwood*, 19 *Wend.*, 515.) This is extremely plain, and the contrary was not held at the trial; but the judge said the question did not arise, and therefore refused to inform the jury that such was the law. If Beebe's first mortgage was extinguished by taking the second, then it is true the question did not arise. But that was the point which the jury were told to determine from the conflicting evidence. They might well have found it not extinguished, in which case the question would arise directly whether the lien was lost by the omission to renew as the statute

required.   The refusal to charge as requested implied at least a doubt as to the law upon this point, and for aught that appears the general verdict of the jury may have been given against Beebe's title, on the ground that he had lost the benefit of his mortgage by failing to renew it, and not on the ground that it was extinguished.

It is unnecessary to say more in order to reverse the judgment, but as the question of extinguishment must arise on another trial, it is proper now to dispose of it upon the facts, as they appear.   According to the testimony of Seneca Beebe, it was expressly agreed when he took the second mortgage that the first one should be kept alive ; according to the testimony of Marvin, the mortgagor, nothing was said on the subject ; both agree that the note secured by the first mortgage, was given up and the amount, included in a new note, secured in the second ; both also agree that the first mortgage, although present at the time, was not given up or canceled in fact.   The judge refused to hold that upon these facts there was no extinguishment, and declining also to charge that an *express* agreement must be found to relinquish the mortgage, told the jury to find whether there was an *agreement*, leaving them at liberty, as I understand it, to infer one from the circumstances stated.

I think there was no question for the jury taking the version of the facts most favorable to the plaintiff.   It is perhaps material to state that the debt due from Marvin to Beebe was for medical services and rent.   The note, therefore, was the evidence merely of that debt, and not the debt itself.   It is extremely well settled in this state, that the taking of a debtor's note does not merge or extinguish the demand for which it is taken. (*Gregory* v. *Thomas*, 20 *Wend.*, 17 ; *Waydell* v. *Luer*, 5 *Hill*, 448 ; *Cole* v. *Sackett*, 1 *Hill*, 516.)   In *Cole* v. *Sackett* it was held that the original demand is not extinguished, although it is expressly agreed to take the note in satisfaction, and the doctrine was reiterated

and approved in *Waydell* v. *Luer, supra;* see also *Hawley* v. *Foote* (19 *Wend.*, 516); *Frisbie* v. *Larned* (21 *Wend.*, 450, 452). Now, if the first note which Marvin gave to Beebe did not extinguish the demand which he owed him, it is still more clear that giving up that note and taking another in its place could not work such a result. The debt itself, therefore, remained totally unaffected by either of the notes. Thus far there can be no doubt.

We are next to contemplate the mortgage. That, it is truly said, was but an incident to the debt, so that when the debt is gone that is gone also. This was a view of the matter taken at the circuit, and expressed in the charge to the jury. But the error was in considering the mortgage as incidental to the note instead of the demand. Accurately speaking, a note is not a debt at all, any more than any other mere promise. Unless founded on a consideration it is good for nothing between the original parties. Here the note was the evidence merely of a debt, and the mortgage was simply the security for it; and I think the conclusion inevitable that the security stands until in some way separately canceled or the debt itself is discharged. Taking the substituted note, as we have seen, did not affect the debt, and consequently it could not affect the security. It is even more clear that the mortgage remained unaffected. Instead of taking a new note, a judgment might have been recovered on the first one or on the original demand. In that case the debt would have been gone in the sense of being merged in a higher security. Yet it is quite clear that a suit and judgment against the debtor do no disturb any collateral security which the creditor may hold. So the doctrine was laid down in this court, by Johnson, J., in *Butler* v. *Miller* (1 *Comst.*, 500), and I think upon grounds altogether unanswerable.

As renewing the note, therefore, had no tendency towards extinguishing the collateral security, it only remains to inquire whether the giving and acceptance of the second

mortgage could produce such a result.   This inquiry seems
to be already solved.   In *Gregory* v. *Thomas* (20 *Wend.*, 17),
it was adjudged that a second mortgage for the same debt
does not extinguish the first.   That case contains so
thorough an exposition of the doctrine, both upon principle
and authority, that it would be useless now to enlarge upon
it.   The proposition is indeed quite elementary that the
mere act of taking a new security from the same party, and
upon the same property, does not merge or extinguish a
prior one, where both are of the same quality and degree.

It is unnecessary, perhaps, to add that the principle
remains the same, although a small additional account was
included in the renewal note and the second mortgage.   This
may tend to show a motive for the transaction, but it has no
tendency to show that the prior security was extinguished.

It was erroneous, therefore, to leave the question to the
jury.   It may be conceded that if the acts of the parties
had been attended by an express agreement to receive the
second mortgage in satisfaction of the first one, the law
would give that effect to the transaction.   But as the law
does not give such a construction to the simple acts them-
selves, it was improper to leave it to the jury to infer an
agreement and so find an extinguishment.   The inference
would be against the rule, and the rule itself would have
to be surrendered.

The judgment should be reversed and a new trial granted.

WRIGHT, J.   The property in dispute was mortgaged
to one Seneca Beebe, in August, 1851.   In May, 1852, the
plaintiff took a chattel mortgage on it, the instrument
stating, in terms, that it was given subject to the claim of
Beebe.   Beebe did not, within the year, re-file a copy of
his mortgage; but in August, 1852, took another mortgage
on the same property to secure the same debt.   It is not
pretended that at this time the debt, to secure which the
first mortgage was given, was actually paid.   In April,

1853, the plaintiff re-filed a copy of his mortgage with a statement of the amount due thereon. Some two months afterwards Beebe sold the property, and, after demand, the plaintiff brought this action against the bailee of the purchaser, claiming title thereto under and in pursuance of his mortgage. Had he acquired a title superior to that of Beebe?

A chattel mortgage is something more than a mere security. It is a conditional sale of the thing mortgaged, and operates to transfer the legal title to the mortgagee, to be defeated only by a full performance of the condition. Nothing short of actual payment, in case of a breach of the condition, before foreclosure or sale, or voluntary waiver or surrender, can re-vest the legal title in the mortgagor. At the time the plaintiff's mortgage was given the legal title to the property had become absolute in Beebe; and the mortgagor had no interest therein except a mere equity of redemption. (*Patchin* v. *Pierce*, 12 *Wend.*, 61; *Burdick* v. *McVanner*, 2 *Denio*, 170; *Charter* v. *Stevens*, 3 *id.*, 33.) The tender of the debt would not have re-vested the title in him. (*Thomas* v. *Gregory*, 20 *Wend.*, 17; *Mattison* v. *Baucus*, 1 *Comst.*, 295; *Otis* v. *Wood*, 3 *Wend.*, 498.) Nor did the omission to re-file the Beebe mortgage avoid it as against the plaintiff or enure to the benefit of the latter. The plaintiff had actual notice of the Beebe mortgage, for it was mentioned in his own, and the latter was given subject to it. He was not a subsequent mortgagee in good faith, against whom, on account of an omission to re-file, the Beebe mortgage ceased to be valid. (2 *R. S.*, 3d ed., 136, §§ 9, 10, 11; *Sanger* v. *Eastwood*, 19 *Wend.*, 515; *Gregory* v. *Thomas*, 20 *Wend.*, 17.) He acquired no legal title to the chattels by his mortgage, as the mortgagor could transfer none. He was without such title when this suit was brought, unless there had been a payment of the Beebe debt, or a waiver or surrender of his mortgage, re-vesting the title in the mortgagor, and by relation, or in some other way, in

3 KERN.—36

the plaintiff. It is difficult to perceive how this could be, or how, admitting that there had been a satisfaction by or surrender to the mortgagor of the Beebe mortgage, it would enure to the benefit of the plaintiff. All the interest which he had in the chattels was acquired by a mortgage, given subject to or in subordination to that of Beebe. The subsequent acquisition of title by the mortgagor, or even a re-conveyance or release to him by Beebe, could not enlarge the operation or effect of the plaintiff's mortgage, or reform the instrument, so that his interest in the property should not be subordinate to, but independent of the Beebe mortgage. The plaintiff had no other or different title or right to the property, when he demanded it, than at the execution of the instrument, which was a right acknowledged by the instrument to be given and exist in subordination to the Beebe claim. Yet in a controversy, not between the mortgagor and Beebe, but betwen the plaintiff and one defending under the Beebe title, the court submitted to the jury the determination of the question whether, when the second mortgage was given, it was the understanding between Beebe and the mortgagor, that the first should be extinguished and given up ; and substantially instructed them, that if they found that the parties *intended* that the first mortgage should be relinquished and extinguished, their verdict should be for the plaintiff. The judge did not inform the jury how the annihilation of the security, with or without payment or satisfaction of the debt, would invest the plaintiff with the legal title to the property, transform his mortgage into one not given subject to such security, and enlarge his interest in the property in question, beyond that given by the terms of the original transfer. In any view, the submission and instruction, it seems to me, were erroneous. Conceding that the plaintiff's mortgage gave him an interest in the property beyond the surplus remaining after payment of the debt secured by Beebe's first mortgage, and that an agreement to relinquish and cancel the latter security would

operate to invest him with the legal title (without which he could not maintain the action), the case was barren of proof of any express parol agreement to give up or extinguish Beebe's first mortgage. On this point there was no conflict in the evidence, and it was full upon the question that there was no such agreement. Indeed, it established (and it was all drawn out on the part of the plaintiff) the reverse of the proposition submitted by the judge; and this, though in effect he erroneously instructed the jury that they were at liberty to imply an agreement to cancel and extinguish the mortgage, from the act of giving a new one and the surrender of a note mentioned in the first. Whether there had been an agreement for cancellation was, on the undisputed evidence, a question of law and not of fact. It did not belong to the jury; and they were probably misled by the charge of the judge. It was calculated to convey the impression that the Beebe mortgage was given to secure the note instead of the debt, of which the note was merely the evidence; that the mortgage must stand or fall with the note; and that whatever extinguished the note (even though renewed by another) would necessarily extinguish the mortgage, although the debt remained unpaid.

But it required something more than an understanding or agreement to be inferred from the acts of the parties, to satisfy and extinguish the mortgage. The taking of a new mortgage to secure the same debt and a surrender of the old note was no satisfaction or extinguishment of the original debt; nor by a surrender of the note was the first mortgage annihilated. The mortgages were but collateral securities for the debt. The debt was not paid, and until that was done all collateral securities should stand. (*Butler* v. *Miller*, 1 *Comst.*, 500; *Gregory* v. *Thomas*, 20 *Wend.*, 17.) A subsequent security for a debt of equal degree with a former, for the same debt, will not by operation of law extinguish it. (*Manhood* v. *Cuch*, *Cro. Eliz.*, 716; *Higgins'* *Case*, 6 *Rep.*, 45; *Gregory* v. *Thomas*, 20 *Wend.*, 17; *Phelps*

v. *Johnson*, 8 *Johns. R.*, 54; *Preston* v. *Preston*, *Cro. Eliz.*, 817; *Mumford* v. *Stocker*, 1 *Cow. R.*, 178; *Cornell* v. *Lamb*, 20 *Johns. R.*, 407; *Enis' case*, *Lit. R.*, 58.) In this case it was not pretended that the debt was paid by the giving of the second mortgage. The most that is claimed from the transaction is, that it was equivalent to a payment of the first note, and that being satisfied and surrendered up, the mortgage, which was but an accessory or incident to the debt, was annihilated by such payment. But the difficulty is, that the mortgage was a security for the debt and not for the note, which was merely evidence of the debt and not the debt itself. Surrendering the old note and taking a new one could not be a satisfaction or payment of the debt, and the mortgage, being a security for the latter, would not be extinguished short of such payment. The debt was not merged in the first note, so that, by operation of law, the note being surrendered and a new one substituted, the debt was satisfied. The transaction was but taking another security, of equal degree with a former one, for the same debt, which had not the legal effect to extinguish the first. Nor would an express parol agreement at the time of giving and receiving the second mortgage, that the first should be deemed satisfied, have operated to extinguish the first mortgage. To constitute the second mortgage a bar to the first, there must have been an express release, or an implied, or one arising out of a covenant not to sue. This rule rests on adjudged cases, and, I think, on principle. (*Gregory* v. *Thomas*, 20 *Wend.*, 17; *Phelps* v. *Johnson*, 8 *Johns. R.*, 54.) In *Day* v. *Leal* (14 *Johns. R.*, 404) it was held that even a security of a higher nature, if it be taken expressly as collateral security, will not extinguish the inferior; and in *Higgins' case* it was said that, where the securities are of equal degree, they shall be intended and held to be distinct and independent, although both are liens upon property. Had an express parol agreement been shown that Beebe's first mortgage should be satisfied by the second, the trans-

action in legal effect would not have been a satisfaction or extinguishment of the prior security. But it is unnecessary to hold that Beebe's first mortgage could only be extinguished by an express release, or one to be implied from a covenant not to sue, as there was no express parol agreement shown that it should be satisfied by the second mortgage, and no evidence to go to the jury upon which such a question could be properly predicated. In legal effect the first security was not merged in the second; nor was a former security satisfied by the act of receiving a subsequent one for the same debt. The judge, therefore, erred in leaving to the jury to imply an agreement from the transaction of the 19th August, 1852, and virtually instructing them that if they should find that the parties intended that the first mortgage should be relinquished and extinguished the respondent was entitled to recover.

The judgment should be reversed and a new trial ordered.

Judgment accordingly.