## In re HENRY HARRISON CO., Inc.
### No. 25549.

District Court, W. D. New York.

July 16, 1941.

Abbott, Rippey & Hutchens, of Rochester, N. Y., for petitioner.

Charles Platt Williams, of Lyons, N. Y., for State Bank of Commerce of Brockport, intervenor.

John Pallace, of Brockport, N. Y., for trustee.

BURKE, District Judge.

The application herein brings up for review an order of the referee in bankruptcy which order held invalid and void a certain mortgage dated December 31, 1931, executed in the name of the bankrupt corporation by its president to the First National Bank of Brockport, the petitioner herein. The order further directed the trustee in bankruptcy to pay from the proceeds of the sale of the property covered by the mortgage an amount equal to the judgment liens of the State Bank of Commerce of Brockport against the same property, which judgments were docketed in 1933. The adjudication in bankruptcy was on December 10, 1936. At the time the mortgage was given the bankrupt was indebted to the First National Bank on loans secured by warehouse receipts for produce owned by the bankrupt. The bank demanded that the bankrupt give a mortgage upon its real estate as additional security for the loans. The bankrupt was at the time also obligated to the State Bank of Commerce. When the mortgage was executed and delivered the directors of the bankrupt and its sole stockholders were Henry Harrison, Frank D. Hebbard, and George S. Terry. Hebbard was president. Harrison was in Florida when the bank demanded the additional security. He was informed of the demand by the bank for a collateral mortgage by telegram from Hebbard to which he replied, "Use your judgment work with Tom (president of the First National) write situation at once". Following this exchange of telegrams the mortgage was given. Harrison returned from Florida early in the Spring of 1932.

He knew the mortgage had been given and raised no question regarding it. The State Bank of Commerce intervened in the bankruptcy proceeding and demanded that the mortgage be set aside as invalid. The referee has found that the mortgage was not authorized by the board of directors, that the execution thereof by the president on behalf of the corporation was without authority, and that 450 shares of preferred stock standing on the books of the company in Hebbard's name and 450 shares of preferred stock standing on the books of the company in Terry's name were in fact held and owned by Harrison. By order upon stipulation of the parties the real estate has been sold and the proceeds are being held by the trustee to await the decision of this Court upon the review of the referee's order.

There appears upon the minute book of the bankrupt corporation a resolution, dated December 31, 1931, authorizing the president, on behalf of the company, to execute and deliver a collateral mortgage. The resolution is unsigned. Neither Hebbard nor Terry recalled the occasion of a meeting of the board of directors on that date. The president of the bankrupt corporation had power prima facie to do any act which the directors could authorize or ratify. Oakes v. Cattaraugus Water Co., 143 N.Y. 430, 436, 38 N.E. 461, 26 L.R.A. 544; Sun Printing & Publishing Association v. Moore, 183 U.S. 642, 22 S.Ct. 240, 46 L.Ed. 366. Even though it be assumed that no meeting of the board of directors was held, at which the execution and delivery of the mortgage was authorized, all the stockholders had knowledge that the mortgage had been given. Their acquiescence amounts to ratification. G. V. B. Mining Co. v. First National Bank, 9 Cir., 95 F. 23; Karasik v. People's Trust Co., D.C., 252 F. 324.

Section 16 of the Stock Corporation Law required the consent to the execution of the mortgage "by the holders of not less than two-thirds of the total number of shares outstanding entitled to vote thereon, given either in writing, or by vote at a meeting of the stockholders called for that purpose in the manner prescribed by section forty-five * * * *". On the date of the mortgage the total outstanding stock of the bankrupt corporation was 1,000 shares of preferred and 500 shares of common all of which stock was entitled to vote. Hebbard and Terry were the record holders of more than two-thirds of the outstanding capital stock. Harrison held certificates for nine hundred shares of preferred stock endorsed in blank, four hundred and fifty shares of which stock stood on the books of the company in Hebbard's name and four hundred and fifty shares of which stood on the books of the company in Terry's name. Each had endorsed and delivered the certificates representing his shares to Harrison to be held by him as security for the payment of notes. The consent to mortgage was executed by Hebbard and Terry. They were the proper persons to execute the consent required by Section 16. They, as record holders of the stock, were entitled to vote the stock regardless of who held the certificates. Section 47, Stock Corporation Law. The right to assent to a mortgage upon corporate property may be exercised by the stockholders of record, even though they have assigned their shares and such assent is binding on the assignee holding certificates not transferred on the books of the company. Campbell v. American Zylonite Co., 122 N.Y. 455, 25 N.E. 853, 11 L.R.A. 596; Elyea v. Lehigh Salt Mining Co., 169 N. Y. 29, 33, 61 N.E. 992. The First National Bank was entitled to regard the stockholders of record as those having the right to vote on a proposal to consent to the execution of the mortgage. Harrison as the holder of certificates not transferred on the books of the company was not a holder of stock entitled to vote thereon. New York & New Haven R. Co. v. Schuyler, 34 N.Y. 30; McNeil v. Tenth National Bank, 46 N.Y. 325, 7 Am.Rep. 341.

The mortgage may not be invalidated upon the ground of unlawful preference. There is no proof that the corporation was insolvent nor that insolvency was imminent at the time the mortgage was given.

Nothing was realized by the petitioner upon the warehouse receipts held as collateral to the obligations of the bankrupt nor is there any evidence that the value of that collateral was dissipated by any act of the petitioner.

The findings and conclusions of the referee, in so far as they are inconsistent with this opinion, are reversed. New findings and conclusions in accord herewith may be submitted. The order of the referee is reversed.