**AMERICAN TRUST CO. v. NEW YORK CREDIT MEN'S ADJUSTMENT BUREAU, Inc.**

**No. 27, Docket 22721.**

United States Court of Appeals, Second Circuit.

Argued Oct. 9, 1953.

Decided Oct. 29, 1953.

Monroe Collenburg, New York City (Hardin, Hess & Eder, Frank Rashap, and Walter M. Hinkle, New York City, on the brief), for petitioner-appellant.

Robert J. Blum, New York City (Israel G. Halpert, New York City, on the brief), for appellee.

Before CHASE, Chief Judge, and CLARK and FRANK, Circuit Judges.

CLARK, Circuit Judge.

This appeal involves the validity of certain chattel mortgages given by the bankrupt, Wire Recording Corporation of America, to petitioner, American Trust Company. The first mortgage loan of those involved herein was made by the Trust Co. to the bankrupt, then known as St. George Recording Equipment Corporation, on January 14, 1947, at which time Ernest St. George owned 25 shares of the bankrupt's outstanding stock, and his wife, Marie St. George, owned the remaining 20 shares. A formal written agreement provided for a loan of $100,000 to be repaid at the rate of $4,000 per month and to be secured by a chattel mortgage on all of the bankrupt's machinery and equipment. The Trust Co. advanced the money, and the bankrupt delivered to it 25 collateral notes for $4,000 each, payable at the rate of one note per month; the Trust Co. also received and duly recorded a chattel mortgage as agreed, executed by Ernest St. George as president of the company. Thereafter the bankrupt regularly paid off the notes as they became due each month until in November, 1947, the indebtedness was reduced to $56,000.

Meanwhile, in October of that year, Mr. and Mrs. St. George transferred the

entire capital stock of the corporation to John J. Sullivan, who proceeded to change its name to the present form and to organize a holding company of the same name. The stock of the holding company was issued to Sullivan, his wife, and his associates. The holding company received beneficial ownership of the bankrupt's stock, but Sullivan continued as holder of record.

In November, Sullivan negotiated with the Trust Co. to increase the bankrupt's loan from its then level of $56,000 to the original $100,000. The Trust Co. agreed on condition that a new chattel mortgage be given that would include not only all the machinery and equipment covered by the original mortgage, but whatever machinery and equipment had been acquired by the bankrupt in the meantime. Accordingly the Trust Co. loaned the bankrupt $44,000 more. The bankrupt executed a new note for $100,000, and the Trust Co. cancelled and surrendered the 14 original notes which it still held. The bankrupt executed a chattel mortgage which was found to be defective. Instead of having it corrected, a new instrument was executed on December 22, 1947, which was duly recorded. But this instrument did not fully carry out the parties' agreement, since the attached schedule of property omitted some of the chattels agreed on, including a substantial part of those covered by the original (January) mortgage. On the same day the bankrupt executed and delivered a real property mortgage, not in issue, which was intended as further security.

On February 25, 1948, the bankrupt executed two further chattel mortgages, which were recorded on March 30, 1948.

The referee concluded that all four of the mortgages were invalid for want of consent of the holders of two-thirds of the bankrupt's outstanding stock. N.Y. Stock Corporation Law, McK.Consol. Laws, c. 59, § 16. He further found that the two mortgages of February 25, 1948, were invalid for late filing. With his first finding we disagree.

■■ The conclusion below was based primarily on counsel's concession that beneficial ownership of the bankrupt's stock was in the holding company. This fact is not in dispute; but the bankrupt's stock certificate book shows beyond question that on and after October 16, 1947, Sullivan was the sole stockholder of record.[1] This we deem controlling.

N.Y. Stock Corporation Law § 16, subd. 1, provides in part: "The consent to the execution of [a] mortgage * * * by the holders of not less than two-thirds of the total number of shares outstanding entitled to vote thereon, given either in writing, or by vote at a meeting of the stockholders called for that purpose * * *, shall be required." The statute goes on to provide for the filing of a certificate showing such consent with the filing of the chattel mortgage. New York law interprets this requirement as referring to holders of record. N.Y. Stock Corporation Law § 47[2]; Elyea v. Lehigh Salt Mining Co., 169 N.Y. 29, 33, 61 N.E. 992; Vail v. Hamilton, 85 N.Y. 453, 458; In re Henry Harrison Co., D.C.W.D.N.Y., 40 F.Supp. 733. If then the January and December mortgages were consented to by sufficient holders of record, they must be upheld.[3]

---

1. This conclusion is fortified by the fact that the bankrupt's certificate of change of name, duly certified by the New York Secretary of State on October 23, 1947, was executed by Sullivan as sole stockholder of record. This is presumptive evidence. N. Y. General Corporation Law, McK.Consol.Laws, c. 23, § 12, subd. 1.

2. "Unless otherwise provided in the certificate of incorporation or other certifi-

cate filed pursuant to law, every stockholder of record of a stock corporation shall be entitled at every meeting of the corporation to one vote for every share of stock standing in his name on the books of the corporation."

3. Appellee urges that since the Trust Co., in its petition for review, did not specify as error the referee's failure to find that Sullivan had record title to the bankrupt's stock, it is now foreclosed from

The original (January) mortgage was executed by Ernest St. George, who, by himself, held less than two-thirds of the outstanding stock. The mortgage was thus initially invalid. It is urged that his wife, Marie St. George, holder of the remaining stock, was from January to October, 1947, treasurer and a director of the bankrupt; that as such, she had constructive notice of the existence of the mortgage; that her silence in the face of this notice must be taken as consent sufficient to ratify the transaction and satisfy the statute. We have serious doubt that the New York cases go so far, but we find it unnecessary to decide the point.

When Sullivan became the bankrupt's sole stockholder and president in October, 1947, he undertook negotiations to renew the mortgage loan. He agreed to include in the new mortgage all of the chattels covered by the original mortgage. This treatment of the original mortgage we think must be taken to constitute ratification of that transaction. Under the New York decisions, § 16 is designed not for the benefit of creditors, but to protect stockholders from improvident, collusive, or unwise acts of the directors. Accordingly it is the fact of consent, rather than its form, which is controlling. Nor is it material that consent was obtained after execution of the mortgage; the delay merely results in the invalidity of the mortgage prior to the time of consent. That part of the statute which calls for filing of a certificate of stockholder consent has been construed not to affect the substance of the transaction, but merely to provide for protection of the evidence of consent. Rochester Sav. Bank v. Averell, 96 N.Y. 467; Black v. Ellis, 129 App.Div. 140, 113 N.Y.S. 558, affirmed on other grounds 197 N.Y. 402, 90 N.E. 958; Waterman Corp. v. Johnston, 195 Misc. 991, 91 N.Y.S.2d 522; see Manufacturers Trust Co. v. Ralph, 300 N.Y. 411, 417, 91 N.E.2d 865. Under these cases Sullivan's actions constituted sufficient compliance with the statute; and, accordingly, since he was sole stockholder of record, the mortgage was validated.

Appellee urges that, even if valid, the original (January) mortgage was discharged when the Trust Co. accepted and recorded the mortgage of December 22, 1947. We do not agree.

On November 26, 1947, the day that the second loan was made, the Trust Co. credited the bankrupt with $100,000 and debited it with $56,000, the amount of the original debt still outstanding. It placed the $44,000 difference in the bankrupt's deposit account and surrendered the unpaid notes amounting to $56,000, which it marked paid. The bankrupt tendered a mortgage which the Trust Co. forwarded to its attorneys, together with instructions to release the original mortgage. But, the tendered mortgage being rejected as defective, the instructions were never carried out. When in December the bankrupt delivered a mortgage replacing the defective November instrument, the Trust Co. prepared and caused the bankrupt to sign an affidavit of title which indicated, *inter alia*, that the original loan was to be liquidated out of the proceeds of the new loan.

From the foregoing it appears that the parties had contemplated that the second mortgage would replace the original one. The original, however, was never in fact released; and under the circumstances we do not think that it can be treated as eliminated. In the New York law of simple contracts it is often stated that the intent of the parties determines whether acceptance of a note extinguishes a prior obligation. On occasion such obligations have been held extinguished, Noel v. Murray, 13 N.Y. 167; First Nat. Bank of City of Brooklyn v. Gridley, 112 App.Div. 398, 98 N.Y.S. 445; Carter, Rice & Co. v. Howard, 17 Misc. 381, 39

---

raising this argument. Since the error is plain, we shall nevertheless consider it, in the interest of justice. See 2

Moore's Collier on Bankruptcy ¶39.22, pp. 1489–1490, 14th Ed. 1940.

N.Y.S. 1060; more frequently they have not, In re Utica Nat. Brewing Co., 154 N.Y. 268, 48 N.E. 521; National Bank of Newburgh v. Bigler, 83 N.Y. 51; Feldman v. Beier, 78 N.Y. 293; Jagger Iron Co. v. Walker, 76 N.Y. 521; Garfield Nat. Bank v. Wallach, 223 App. Div. 303, 228 N.Y.S. 184. But a more substantial showing is required for the modification of a security transaction. Thus, intent may cause a mortgage to survive a transaction which would normally extinguish it. Champney v. Coope, 32 N.Y. 543; cf. Cohen v. Rossmoore, 225 App.Div. 300, 233 N.Y.S. 196; Lyons Nat. Bank of Lyons, N. Y. v. Guglielmino, Sup., 22 N.Y.S.2d 287, affirmed 261 App.Div. 1039, 26 N.Y.S.2d 509. And where an original secured note is superseded by a subsequent note between the same parties, and a new mortgage is executed, the original mortgage remains in force, absent an express release or a covenant not to sue. Hill v. Beebe, 13 N.Y. 556, 568; Gregory v. Thomas, 20 Wend. 17, 20; see Industrial Bank of Commerce v. Shapiro, 276 App.Div. 370, 94 N.Y.S.2d 437, 440, appeal dismissed 300 N.Y. 741, 92 N.E.2d 317, affirmed 302 N.Y. 566, 96 N.E.2d 619. This is true even though the subsequent note is in a greater amount. Industrial Bank of Commerce v. Shapiro, supra. Since here there is no such formal expression of intent, appellee's contention that the original mortgage was superseded cannot be sustained; the original mortgage must therefore stand. Of course the total amount of indebtedness is not thereby increased; only the allocation of the security to the debt remains as determined by the separate mortgages.

Hence we hold that the original mortgage is valid to the extent of the unpaid balance of $56,000, together with interest thereon. Industrial Bank of Commerce v. Shapiro, supra; Thurber v. Stimmel, 48 Hun, N.Y., 620, 1 N.Y.S. 162, affirmed 119 N.Y. 641, 24 N.E. 4.

Turning then to the mortgage executed in December, 1947, we think that the same considerations apply. Sullivan was sole stockholder of record; and the referee correctly found that he had consented to the transaction. Section 16 has been satisfied, and we hold, therefore, that the December mortgage is valid.

As for the two mortgages of February, 1948, under the principles enunciated above they satisfy § 16, but the unreasonable delay in their filing must invalidate them. N.Y. Lien Law, McK.Consol.Laws, c. 33, § 230; Central Chandelier Co. v. Irving Trust Co., 259 N.Y. 343, 182 N.E. 10; Tooker v. Siegel-Cooper Co., 194 N.Y. 442, 87 N.E. 773; Reynolds v. Webb, Sup., 166 N.Y.S. 668, affirmed 183 App.Div. 915, 169 N.Y.S. 1110; see 4 Moore's Collier on Bankruptcy ¶70.81, p. 1416, 14th Ed. 1942. Appellant urges that the delay should not prejudice its claim as against those who became creditors after filing; but the contention is without merit. As we have recently held, Zamore v. Goldblatt, 2 Cir., 194 F.2d 933, certiorari denied Goldblatt v. Zamore, 343 U.S. 979, 72 S.Ct. 1077, 96 L.Ed. 1370, where one creditor represented by the trustee can avoid the mortgage, so may the trustee on behalf of all. Bankruptcy Act, § 70, sub. e(1), 11 U.S.C.A. § 110, sub. e(1); Moore v. Bay, 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133. The February mortgages are therefore void.

We see no reason at this time to consider the Trust Co.'s contention as to the proper division of the proceeds of sale, since the referee has not yet passed on the issue. The action must therefore be remanded for further proceedings on the basis that the first two chattel mortgages are valid.

Judgment reversed and action remanded for further proceedings in accordance with this opinion.