In the Matter of KNOLL REALTY CORP., Debtor.

No. 51753.

United States District Court
E. D. New York.
June 14, 1957.

Benjamin Jaffe, New York City, for petitioning creditor, Grumman Village Garden Homes, Inc.

Charles Snow, Brooklyn, N. Y., for cross-petitioner, William J. Burke.

Louis P. Rosenberg, Brooklyn, N. Y., for trustee.

ABRUZZO, District Judge.

The debtor herein filed a petition under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. on July 20, 1954. On August 17, 1954, it filed an amended petition under the provisions of Chapter X and on that date a Trustee was appointed for the debtor.

The debtor was engaged in building one-family houses in Bayside, Queens County, New York. In August, 1954, 22 houses were in the process of construction. The property was subject to a first mortgage of $275,000 held by the County Federal Savings & Loan Association and two other mortgages, (1) to William J. Burke in the amount of $46,800, dated April 7, 1954, and recorded April 9, 1954, and (2) to Grumman Village Garden Homes, Inc., dated December 11, 1953, and recorded April 14, 1954.

An order was made after due application authorizing the Trustee to complete the 22 houses under construction upon condition that the expense of completion would constitute a preferred administration claim and a first lien on the 22 houses to be paid out of the proceeds thereof, subject only to the existing mortgage held by the County Federal Savings & Loan Association. The order further provided that all liens of any character and all others claiming a lien against said property would be subordinate to the administration expenses as ultimately allowed by the Court.

On June 20, 1956, a motion was made by Grumman Village Garden Homes, Inc., for an order directing the Trustee to pay to it the amount due under its mortgage of $20,000 with interest to the date of payment. Notice of this motion was given to Burke, the holder of the $46,800 mortgage, and 20 other parties claiming to hold liens against the property which Grumman claimed were subordinate and inferior to its mortgage. An order was made by this Court on June 29, 1956, referring the matter to a Referee in Bankruptcy as Special Master to hear and

determine after an examination of any and all witnesses the issues presented by the petition of Grumman Village Garden Homes, Inc.

The mortgagee, William J. Burke, filed his answer and a cross-petition verified June 21, 1956, to the petition of Grumman. The Trustee of the debtor filed his answer to the petition of Grumman. Hearings were held by the Referee as to the validity of both the Grumman and Burke mortgages.

The petition of Grumman alleges that it loaned the debtor $20,000 on December 11, 1953, less finance charges of $2,000, so that the debtor received $18,000, and the debtor executed its note under the same date for $20,000, payable to Grumman, which was to become due February 11, 1954, with interest. As security the debtor delivered a mortgage dated December 11, 1953, in the sum of $20,000 covering the land and buildings owned by the debtor at Bayside, New York. This mortgage was recorded April 14, 1954.

Burke in his answer and cross-petition alleges that he is the holder of the debtor's bond and mortgage dated April 7, 1954, for the sum of $46,800 which he claims was delivered to him for a valuable consideration. This mortgage was recorded April 9, 1954, five days prior to the recording of the Grumman mortgage. Burke seeks payment from the Trustee of that amount out of the proceeds of the sale of the land and buildings of the debtor covered by his mortgage. Burke claims that his mortgage is a prior lien on the proceeds and that Grumman's lien is subordinate to his.

The answer of the Trustee resists the payment of the Grumman mortgage, claiming it is invalid and void for various reasons which will be taken up later in this opinion.

The trustee attacks the Burke mortgage for various reasons which will also be explored later in this opinion. The Referee found that the Burke mortgage was invalid and the Grumman mortgage valid.

Grumman seeks confirmation of the recommendation of the Referee holding its mortgage valid. Burke is asking this Court to reject the recommendations of the Referee and to declare his mortgage a valid and subsisting lien, superior to the Grumman mortgage.

With respect to the Burke mortgage, the finding by the Referee recommending that this mortgage be held invalid should be confirmed. Findings of fact numbered 36, 37 and 38 by the Referee are amply supported by the evidence. The Court sees no reason to disturb these findings.

Grumman loaned the debtor $20,000 on December 11, 1953, less finance charges of $2,000. This loan, with interest, was due and payable on February 11, 1954, two months later, and as security the debtor delivered the December 11, 1953, mortgage now in question. This alleged finance charge amounts to 5 per cent a month, plus 6 per cent interest, which is ½ per cent per month, so that Grumman was to receive a bonus, finance charge and interest of 5½ per cent per month which amounts to an annual interest rate of 66 per cent on the original loan.

When the debtor corporation was organized on April 14, 1952, Burke and Herman Axelrod were each owners of one-half of the stock of the debtor corporation. When the mortgage to Grumman was executed on December 11, 1953, the debtor did not convene a meeting of the board of directors, nor was any authorization given by the directors for the execution of this mortgage. The real seal of the corporation was not used but Axelrod purchased a new seal, a reasonable facsimile of the original, and that seal was used. Jennie Axelrod, the wife of Herman Axelrod, purporting to be the secretary of the corporation on December 11, 1953, certified that the mortgage to Grumman was authorized by the board of directors. Jennie Axelrod undisputedly was not the secretary of the corporation at that time.

Section 16 of the New York Stock Corporation Law, McKinney's Consol. Laws,

c. 59, provides that consent to the execution of a corporate mortgage, except for a purchase-money mortgage, must be "by the holders of not less than two-thirds of the total number of shares outstanding entitled to vote thereon, given either in writing, or by vote at a meeting of the stockholders called for that purpose."

The petitioner Grumman refers to Exhibit 3, the stockholders' consent dated December 11, 1953, which bears the signatures of Herman Axelrod and his wife, Jennie Axelrod, in which it is indicated that they were the owners of all the stock on December 11, 1953. The facts do not bear out this contention.

Burke testified that in November, 1953, as a result of a dispute with Axelrod it was agreed that he was to sell his half of the stock to Axelrod. Burke was to receive $2,500 for his half of the stock plus payment of all the moneys Burke had loaned the debtor. If and when this agreement was fulfilled Burke would then transfer his fifty per cent of the stock to Axelrod. The $2,500 was paid to Burke either in November or January. The testimony is not clear as to just when. On April 7, 1954, a mortgage was given by Axelrod to Burke for $46,800. This mortgage was to cover the moneys Burke claimed he had loaned the debtor. Burke recorded his mortgage on April 9, 1954. Grumman recorded its mortgage on April 14, 1954. On April 7, 1954, Burke transferred all of his stock, certificates numbered 2 and 3, which was apparently all the stock of the corporation, to Axelrod, making him the sole stockholder. The stock book of the debtor on that date, to wit, April 7, 1954, records for the first time that Axelrod owned more than fifty per cent of the stock.

The consideration for the sale of Burke's stock to Axelrod was two-fold, first, the payment of $2,500 and secondly, the reimbursement to Burke for all the money loaned to the debtor corporation. Title to the stock was not to pass until both conditions were met.

From these facts the Court finds that Axelrod before April 7, 1954, owned fifty per cent of the stock and on April 7, 1954, he became the owner of all of the stock.

In In re Constantine Tobacco Co., 2 Cir., 290 F. 128, the Circuit Court of Appeals for this Circuit ruled that a chattel mortgage was in proper form even though a separate consent in writing had not been signed by the holders of not less than two-thirds of the capital stock, duly subscribed and acknowledged, but this technicality did not affect the validity of the mortgage due to the fact that the mortgage was signed on behalf of the bankrupt corporation by its president who was the sole stockholder of record, except for a few qualifying shares, and the actual owner of the capital stock.

In In re Victoria Fusilli Co., 2 Cir., 79 F.2d 611, at page 612, the Court said:

"The Appellate Division in Black v. Ellis, 129 App.Div. 140, 113 N.Y. S. 558, held that, where actual consent to the execution of the mortgage by stockholders owning two-thirds of the shares entitled to vote was proved, the mortgage was not void though strict compliance with the statute was lacking. It should be noted, however, that the Court of Appeals affirmed this case on another ground, viz. that the mortgage in question was in effect a purchase-money mortgage to which the statute did not apply. See Black v. Ellis, 197 N.Y. 402, 90 N.E. 958. That court has held that, where the consent of stockholders holding the statutory number of shares was not given, the mortgage was void. Leffert v. Jackman, 227 N.Y. 310, 125 N.E. 446. And so have we. In re James, Inc., 2 Cir., 30 F.2d 555; In re Astell Engineering & Iron Works, 2 Cir., 284 F. 967."

In In re J. A. M. A. Realty Corporation, 2 Cir., 92 F.2d 3, the stock of a family corporation was held by one Harriman, his wife and daughter. In bankruptcy the trustee challenged the validity

of a chattel mortgage. The facts surrounding the giving of the chattel mortgage were as follows:

Harriman who was president held the power of attorney of a Mrs. Dixon. Acting as her agent he drew a check on her bank account for $75,000. A chattel mortgage was drawn as collateral for the check so drawn. There was no meeting of stockholders that authorized or ratified the execution of the mortgage. Harriman who executed the mortgage owned less than half of the stock, but he was in sole charge of the affairs and was the only person who made decisions concerning the conduct of the business. Referring to Section 16 of the New York Stock Corporation Law, the Court ruled as follows (92 F.2d at page 6):

"The purpose of section 16 is to prevent the officers of a corporation from mortgaging its assets without the knowledge and consent of two-thirds of the shareholders. This purpose is satisfied if the requisite number have actual knowledge and evidence their consent by the execution and acceptance of the mortgage document. It is not satisfied merely by proof that the president dominates the corporation and the other stockholders are accustomed to leave all corporate decisions to him. There is no evidence that the other stockholders ever had actual knowledge of the execution of the mortgage in suit. In the absence of compelling state decisions, we are unwilling to construe the statute as sanctioning a consent based only on general acquiescence in whatever the dominating officer may do. Accordingly the mortgage was properly held invalid under section 16. * * "

The evidence indicates that Burke did not know of the execution of the mortgage in question on December 11, 1953.

The Court's attention has been directed to the case of Rochester Savings Bank v. Averell, 96 N.Y. 467, wherein the General Manufacturing Act requiring the written consent of stockholders owning two-thirds of the capital stock of a manufacturing corporation to mortgage its property and a valid consent of the stockholders must be present in order to render the creation of a valid mortgage. This case was decided October 7, 1884. It ruled that where a proper assent was not present at the time the mortgage was issued a subsequent assent is valid where there are no intervening rights. The consent of the stockholders was the important and essential thing.

On December 11, 1953, Burke did not give his assent. In a bankruptcy the rights of creditors between December 11th and April 7th might well be affected.

Leffert v. Jackman, 227 N.Y. 310, 125 N.E. 446 (decided October 14, 1919, much later than the Rochester case) reviewed the Stock Corporation Law, § 6 with respect to the validity of a mortgage. It reviewed Vail v. Hamilton, 85 N.Y. 453, where the corporation involved had a capital stock of five thousand shares, all of which had been issued. Nine hundred and forty shares were the property of the company; five hundred shares so held were transferred on the books of the corporation to one C. for the purpose of securing an indebtedness of the corporation and a certificate therefor was delivered to him. Subsequently the company executed a mortgage on its property. At that time a written assent to it was signed by stockholders owning two thousand seven hundred and sixty-four shares of the stock, and in addition a consent was signed by the company by its secretary and president claiming therein to be a stockholder to the amount of nine hundred and forty shares. C. did not know of nor assent to the mortgage. It was ruled that the company could not vote its own shares of 940 and surely not the 500 shares transferred on the books of the corporation to C. As the statute was not complied with the mortgage was ruled invalid.

The Leffert case ruled that a mortgage given under the Stock Corporation Law which did not have the consent of two-thirds of the stockholders of record at the time it was made and executed was not a valid mortgage.

242

Until such time that Burke's stock was transferred to Axelrod on the stock book of the debtor corporation, Burke was for all intents and purposes the owner of the stock. As was said in Elyea v. Lehigh Salt Mining Co., 169 N.Y. 29, 34, 61 N.E. 992, 993:

"Until a transfer out of his name, the stockholder of record is to the world the owner of the stock, and the assignee must abide by his action in the management of corporate affairs. * * *"

Grumman also advances the claim that there is testimony by Burke that Axelrod purchased the stock for $2,500 in January, 1954. On February 11th the mortgage was extended for two more months and, therefore, the extension makes the mortgage valid as at that time Axelrod was the owner of all of the stock. Unfortunately this does not solve the problem for Grumman for the evidence is clear that it was agreed Burke was not to surrender title to the stock until he was fully repaid for his loan. This was not done until April 7, 1954. American Trust Co. v. New York Credit Men's Adjustment Bureau, 2 Cir., 207 F.2d 685, relied on by Grumman and cited by the Referee is clearly distinguishable.

In the American Trust Co. case, on January 14, the first mortgage loan of those involved was made by the trust company to the Wire Recording Corporation of America, which was then known as the St. George Recording Equipment Corporation. At that time Ernest St. George owned 25 shares of the bankrupt's outstanding stock and his wife, Marie St. George, owned the remaining 20 shares. In October of that year Mr. and Mrs. St. George transferred the entire capital stock of the corporation to one John J. Sullivan. Apparently he changed the name to New York Credit Men's Adjustment Bureau, Inc., and he organized a holding company of the same name. The stock of the holding company was issued to Sullivan, his wife, and his associates. The holding company received beneficial ownership of the bankrupt's stock but Sullivan continued as holder of record of the stock. In November, Sullivan negotiated a new mortgage with the trust company. The bankrupt on February 25, 1948, issued two further chattel mortgages which were recorded on March 30, 1948. The Referee concluded that all four of the mortgages were invalid for want of consent of the holders of two-thirds of the bankrupt's outstanding stock. New York Stock Corporation Law, Section 16. The District Court confirmed the Referee's findings. The Circuit Court reversed the District Court and stated as follows (207 F.2d at page 687):

"The conclusion below was based primarily on counsel's concession that beneficial ownership of the bankrupt's stock was in the holding company. This fact is not in dispute; but the bankrupt's stock certificate book shows beyond question that on and after October 16, 1947, Sullivan was the sole stockholder of record. This we deem controlling."

In the same opinion, referring to Section 16, this was said (at page 687):

"New York law interprets this requirement as referring to holders of record. * * * If then the January and December mortgages [the original mortgage and the extension] were consented to by sufficient holders of record, they must be upheld."

The reasoning is sound. The first mortgage was given and consented to by St. George and his wife at a time when they owned all of the stock. The extension and renewal of this mortgage was consented to by Sullivan who was the holder of record of all of the stock at that time. The Circuit Court aptly ruled that Section 16 of the New York Stock Corporation Law had been complied with.

Axelrod on December 11, 1953, did not own two-thirds of the stock and, therefore, could not issue a valid mortgage. On February 11, 1954, when the mortgage was extended by Axelrod, be-

 

cause of non-payment, he did not own the required number of shares and, therefore, the renewal or extension by Axelrod was ineffectual.

An order may be submitted in accordance with this decision.