C. N. K. COMPANY, Petitioner-Appellant,

v.

Joseph F. RUGGIERI, Trustee-Appellee.

No. 70, Docket 25638.

United States Court of Appeals Second Circuit.

Argued Nov. 19, 1959.

Decided Dec. 29, 1959.

Benjamin Jaffe, New York City (Ralph Stout, New York City, on the brief), for petitioner-appellant.

Joseph Jaspan, Brooklyn, N. Y. (Louis P. Rosenberg, Brooklyn, N. Y., on the brief), for trustee-appellee.

Before MEDINA, MOORE and FRIENDLY, Circuit Judges.

MOORE, Circuit Judge.

By petition, C. N. K. Company (CNK) sought an order directing Joseph F. Ruggieri, Trustee in bankruptcy of Dallas Homes, Inc. (Dallas), Geary Realty Corp. (Geary), and Knoll Realty Corp. (Knoll) to pay to CNK $20,000 with interest from December 11, 1953 from funds held by the Trustee resulting from the sale of certain real estate in Nassau County (the Syosset property) which CNK claimed to be security for such indebtedness.

Although corporate and partnership names are used, Herman Axelrod, a builder of homes on Long Island, and Nathan Koslow, a lender of money primarily for real estate operations, are for all practical purposes the real parties in interest. Axelrod was the principal officer and controlling stockholder of Dallas, Geary and Knoll; Koslow was the chief partner of CNK (a family partnership) and the president and principal stockholder of Grumman Village Garden Homes, Inc. (Grumman).

Properties owned by Dallas, Geary and Knoll were subject to first mortgage or building loans; Koslow provided the secondary financing, taking junior mortgages.

On December 11, 1953 Koslow made available to Axelrod $18,000, the corporate vehicles used being Grumman, the lending corporation and Knoll, the borrowing corporation. The obligation was evidenced by a note for $20,000 ($18,000 plus a $2,000 bonus) and was secured by a mortgage executed by Knoll on property in Queens County.

In February 1954 Axelrod's corporations were indebted to Koslow's financing companies as follows: Dallas $20,000, Geary, some $80,000 and Knoll $20,000. Axelrod, however, still needed more financing to complete his building projects. As an inducement for further advances to Dallas and Geary, Axelrod offered as security a second mortgage on a property (the Syosset property) not theretofore involved in their financing arrangements. A deed having been requested in lieu of a second mortgage, an agreement was thereupon executed whereby Axelrod, individually and as president of Stratton (corporate owner of the Syosset property), delivered to CNK a contract of sale and deed to the Syosset property as security for the performance by Dallas, Geary and Knoll of their obligations under "all mortgages entered into by said three corporations as mortgagors and C. N. K. as mortgagee." However, so far as existing mortgages were concerned, this language would not serve its purpose unless the Knoll-Grumman mortgage were included because there was no Knoll-CNK mortgage. And there was no evidence of an intent to make new ones. Excluding Knoll the number of corporations with CNK as mortgagee would have been two.

After execution and delivery of the deed of February 11, 1954, CNK charges that Axelrod, on April 5, 1954, wrongfully and without the knowledge or consent of CNK executed a deed of the same property to a nominee and then caused a conveyance to be made and recorded on July 1, 1954 to his corporation, Dallas. In this manner the Syosset property found its way into the hands of the Trustee. These circumstances, CNK claims, constitute notice to Dallas of CNK's prior deed and such rights, if any, as may flow therefrom.

In August 1954 petitions for reorganization of Dallas, Geary and Knoll were filed and on August 17, 1954 the Trustee was appointed. Authorized by the court in January 1955, the Trustee sold the Syosset property and holds about $65,000 subject to final determination of priority rights. Later in 1955 a settlement of the CNK claims against Dallas and Geary was made in which "C. N. K. Company reserved all of its rights against the said proceeds of sale of the Syosset land in the hands of the Trustee to the extent of $20,000, and interest, claimed by C. N. K. Company as due from the Debtor, Knoll Realty Corp." The court approved this settlement.

In June 1956 Grumman sought an order directing the Trustee to pay the $20,000 obligation due from Knoll and claimed that the holder of a $46,800 mortgage, William J. Burke (formerly owner of one-half of the Knoll stock), and some twenty other alleged lienholders were subordinate to its mortgage. The issue was whether there had been a two-thirds stockholder authorization of the execution of the mortgage. The court, reversing the Referee, held the mortgage invalid (In re Knoll Realty Corp., D. C., 159 F.Supp. 237). This court affirmed (2 Cir., 252 F.2d 787).

Koslow, still seeking payment of the $20,000 obligation incurred by Knoll, in April 1958 brought this proceeding in the name of CNK against the Trustee. This is the same claim reserved in the settlement of 1955, which claim (against the Syosset property proceeds) CNK has consistently asserted since that date.

Although at the hearing Koslow relied in part on the intent of the deed of February 11, 1954 as evidenced by the settlement of 1955, he placed primary reliance on an oral assignment by Grumman of

the Knoll mortgage to CNK. The court was of the opinion that this assertion of an oral assignment of the December 11, 1953 mortgage from Grumman to CNK was merely a questionable device to bring this Grumman mortgage under the February 11, 1954 agreement relating to CNK. Counsel for CNK was so intent on his theory of assignment and the court equally so convinced that counsel was being more than cavalier about the facts that heat replaced light and *ad hominem* remarks, frequently indexed as "Colloquy," supplanted testimony.

However, this court must endeavor to search for the underlying equities. Looking toward this end for guideposts, Knoll did receive $18,000 and incurred an obligation for $20,000. The invalidity of the mortgage given as security did not wipe out the obligation. All that was involved in the previous proceeding was Grumman's right to its lien under the Knoll (Queens property) mortgage of December 11, 1953.

On February 11, 1954, when requested by Axelrod for an additional loan of at least $20,000, Koslow stated that he preferred a deed to the Syosset property "as security for all the presently existing loans outstanding by the three debtor corporations to him" and if there were a default he (Koslow) would "have the right to become the absolute owner of the property." The agreement of February 11, 1954 was then prepared. Although that agreement refers to mortgages by the three corporations to CNK, it is equally true that the writing was intended to reflect the parties' understanding of their business transaction. If the Knoll obligation of December 11, 1953 was intended to be included, the failure accurately to describe the mortgagee should not be fatal. There is at least enough in the provisions of the agreement to call for further exploration of the intent of the parties and the taking of such testimony as may be relevant to this question.

Upon such hearing the broad provisions of section 1732 of Title 28 of the United States Code should be kept in mind, although the issue of assignment subsequent to February 11, 1954, oral or on the books, would not appear to be decisive in resolving the rights of the parties. Accordingly, the order denying the CNK petition is reversed and the proceeding remanded for a further hearing to a Referee in Bankruptcy to be designated by the trial court in accordance with this opinion.